541 A.2d 659

**George J. MARMION, Jr.**

v.

**M.O.M., INC.**

**No. 1299, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 3, 1988.

Eric Peltosalo, Annapolis, for appellant.

J.B. Stevens, Jr., Annapolis, for appellee.

Argued before ALPERT, ROBERT M. BELL and POLLITT, JJ.

ALPERT, Judge.

This is a tale of two sections of the same statute in apparent conflict. We must resolve this conflict in order to determine the lease rights of a mobile home park tenant.

## The Proceedings

The appellant, George Marmion, Jr., received a letter dated June 26, 1987, informing him that the owner of the mobile home park in which he lived, M.O.M., Inc. (trading as Parkway Village and hereinafter referred to as "Parkway") had elected not to renew his "month-to-month term rental agreement." Mr. Marmion refused to vacate the premises, however, and Parkway filed a complaint in the District Court for Anne Arundel County seeking his eviction. The case was subsequently transferred to the circuit court when Mr. Marmion prayed a jury trial.

At trial, Parkway moved for summary judgment. It argued that it was entitled to terminate Marmion's month-to-month tenancy and then file suit to evict him as a

holdover under § 8A–1702[1] of the Mobile Home Parks Act (hereinafter "the Act"), contained in the Real Prop.Code. Marmion, however, contended that Parkway was not entitled to terminate his month-to-month tenancy. He relied on § 8A–202(c)(2) of the Act which provides:

> Upon the expiration of each 1–year term, or upon request of the resident at any time during a month-to-month term, a park owner shall offer to a qualified resident a rental agreement for a 1–year period.

He also cited § 8A–1101 which specifies only four grounds upon which a tenant may be evicted. Marmion argued that inasmuch as holding over beyond the termination of a month-to-month tenancy was not one of the four specified grounds for eviction, he could not be evicted.

The trial judge granted Parkway's motion for summary judgment on the basis of § 8A–1702 and a Court of Appeals decision, *Cider Barrel Mobile Home v. Eader*, 287 Md. 571, 414 A.2d 1246 (1980). In doing so, he specifically pointed to *dicta* in *Cider Barrel* that said "the [Mobile Home Parks] Act does not prevent a park owner from refusing to renew an expired lease...." *Id.* at 581, 414 A.2d 1246.[2] Obviously unhappy about his pending eviction, Marmion appealed asserting that:

I. The trial court erroneously granted summary judgment because there existed a factual question as to whether appellant was a "qualified resident," entitled to a lease.

---

**1.** Subsection 1702 is titled: "Holding over beyond termination of rental agreement." The section provides a procedure for repossessing property "after expiration of the term for which it was leased." § 8A–1702(b)(1), Real Prop.Code (1988 Repl.Vol.). (All subsequent references to § 8A will be from the 1988 volume of the Real Property Article.) It also provides for recovery of damages from park residents "who shall unlawfully hold over beyond the termination of the rental agreement." § 8A–1702(a)(1).

**2.** What the parties and the court failed to note, however, is that *Cider Barrel* was decided before the legislature adopted § 8A–202(c) in 1985.

II. Appellant's lease may not be terminated except for cause.

### Legislative History and Purpose

The State legislature enacted the Mobile Home Parks Act in 1976 in response to growing concern for the rights of the residents of mobile home parks. *See Cider Barrel*, 287 Md. 571, 414 A.2d 1246. In 1980, the legislature added § 8A–1702, providing a cause of action for park owners who had tenants who held over beyond the termination of the rental agreement. At the time § 1702 was enacted, neither § 202(a)(2) nor any similar provision existed to give certain tenants the right to demand or be offered a one-year lease. Thus, the Court of Appeals accurately pointed out in *Cider Barrel:* "[T]he [Mobile Home Parks] Act does not prevent a park owner from refusing to renew an expired lease...." 287 Md. at 581, 414 A.2d 1246. Without an obligation to renew, the park owner could refuse to renew a lease, thus making a tenant who remained on the premises beyond the lease expiration a holdover within the purview of § 8A–1702.

Finally, in 1985, the legislature amended the act by adding § 8A–202(c), giving certain qualified tenants the right to a continual renewal of their lease under certain circumstances. The General Assembly expressed its "Legislative Intent" in part as follows:

> The intent of Senate Bill 869 is to require a mobile park owner to offer a renewal of the rental agreement for a one year period to a specified eligible resident, upon the expiration of an initial one year term, or at any time during a month-to-month term upon request of the resident. The intent is also to define the term "qualified resident", to require a 6–month written notice of a lease termination resulting from land use change, and to require a written explanation as to why a resident is not a "qualified resident".

The purpose of Senate Bill 869 is to provide qualified mobile home owners some degree of protection from certain practices of certain mobile home park owners.

*See* the "Summary of Committee Report" of S.B. 869, the Senate Judicial Proceedings Committee, dated March 21, 1985.

It is the apparent conflict between § 8A–1702 (the tenant holding over provision) and 202(c) (the new annual renewal provision) that provides the genesis of this controversy. Thus, the general rule of statutory construction that an appellate court may not ignore the clear language of a statute in order to effectuate what it perceives to be the legislative intent is inapplicable to the case *sub judice. See Newman v. Subsequent Injury Fund,* 311 Md. 721, 723, 537 A.2d 274 (1988) ("[W]hen we seek to ascertain and effectuate legislative intent, the primary source is the language of the statute itself.") *See also G. Heileman Brewing Co. v. Stroh Brewery Co.,* 308 Md. 746, 521 A.2d 1225 (1987). A court must construe an ambiguous statute so as to ascertain and give effect to the intention of the legislature expressed in the statute. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). As Judge William H. Adkins, II explained for the court in *Kaczorowski:*

[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975); *Height v. State,* 225 Md. 251, 170 A.2d 212 (1961). In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.

*Id.* at 513–14, 525 A.2d 628, citing *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986) (some citations omitted).

A leasehold interest in a lot in a mobile home park is governed by a statutory scheme separate and distinct from that which governs traditional leasehold interests. *See* § 8A–101 through 8A–1803 of the Real Property Article. The additional protection given a mobile home owner is premised on his inherent vulnerability as a person who owns a home but leases the land on which that home is located. *See Cider Barrel Mobile Home v. Eader,* 287 Md. 571, 414 A.2d 1246 (1980). As explained by the Supreme Court of Florida:

> Mobile homes come to rest in established parks, the wheels are generally removed, they are anchored to the ground, because of forces of the wind, connections with electricity, water and sewerage are made, awnings are frequently attached, and to a large degree they lose their mobility except, unless, and until the wheels are restored, disruption of electrical, water and sewer connections is had and a certain amount of dismantling and crating is had, all at a substantial expense of the owner of the mobile home who had bought such home with the expectation of being able to remain in the park for a not unreasonable time so long as he abides by all the reasonable regulations established by the park owner. The removal from one park to another becomes more than a mere hitching to a truck or tractor and pulling it away. To a large degree, mobile homes are occupied by people in the lower income brackets who cannot spend several hundred dollars at the mere whim of a lessor park. The classification of mobile home park owners as distinguished from other landlords is reasonable and practical.

*Palm Beach Mobile Homes v. Strong,* 300 So.2d 881, 886 (Fla.1974).

Being mindful of these concerns, we return to the provisions at issue in the case *sub judice.*

*Unraveling the Ravel*

Under the clear language of the statute, as a month-to-month tenant Marmion was entitled to demand a one-year lease at any time, as long as he remained a "qualified resident" of the park. The Code defines a "qualified resident" as one who

(i) Has made rental payments on the due date or within any grace period commonly permitted in the park during the preceding year;

(ii) Within the preceding 6–month period has not committed a repeated violation of any rule or provision of the rental agreement and, at the time the term expires, no substantial violation exists; and

(iii) Owns a mobile home that qualifies for resale and passes an annual inspection according to the standards of the park.

§ 8A–202(c)(1).

Parkway at no time indicated that Marmion was not a "qualified resident" under the Code,[3] nor can it do so at this juncture.[4] Section 8A–202(c)(4) specifically provides that a

---

**3.** Although Parkway's counsel suggested at oral argument that Marmion had lost his status as a "qualified resident," Parkway in its brief simply contended:

> In this case the undisputed facts are that the Appellee was the owner and operator of a mobile home park, the Appellant was a month to month tenant of Parkway's in that park, the Appellant was notified on June 29, 1987 to vacate the leased premises by August 1, 1987, the Appellant failed to vacate, and as result thereof the Appellee filed its complaint on August 7, 1987 alleging that Appellant was a tenant holding over. (E2, 7–8). It is respectfully submitted that these facts fully meet the requirements of Section 8A–1702(b).

Section 8A–1702(b)(1) provides that where a park owner decides to repossess property after expiration of the lease term, he shall give notice one month before the expiration of the term that the tenant must quit at the end of that term. If the tenant refuses to comply, the park owner may make a complaint in writing to the District Court.

**4.** Upon remand, we believe Parkway may attempt to establish that Marmion is no longer a "qualified resident." We also point out, however, that § 8A–202(c)(1) strictly prescribes the grounds upon which a tenant may be classified as unqualified and, moreover, sets a

park owner who refuses to renew a resident's rental agreement on the grounds that he is not a "qualified resident" must give the resident "a written statement of the specific reason for nonrenewal of the rental agreement" within 5 days.

It is not clear from the record, however, whether Marmion asserted his rights under § 8A–202(c)(2) and demanded a one-year lease. Marmion obviously asserted his right to continue on the premises under some sort of lease; his counsel at trial stated:

> There is [nothing] that would establish that Mr. Marmion is not entitled to a year-round lease.

■ Summary judgment may be granted only if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Md.Rule 2–501(a); *see also Salisbury Beauty Schools v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973); *Century I Joint Venture v. U.S. Fidelity & Guaranty Co.,* 63 Md.App. 545, 552, 493 A.2d 370, *cert. denied,* 304 Md. 297, 498 A.2d 1183 (1985). If Marmion was a qualified tenant who asserted his rights to a one-year lease, Parkway could not terminate Marmion's tenancy.[5] Thus, the grant of summary judgment was inappropriate for that reason alone.

---

limited time period in which those grounds may be assessed against a tenant.

5. We also note in passing that Marmion's tenancy could not be terminated by instituting eviction proceedings under § 8A–1101. Section 8A–1101 precisely prescribes the grounds upon which a park resident may be evicted:

§ 8A–1101. Eviction of resident.

(a) *Grounds.* A park owner may only evict a resident for:

(1) Nonpayment of rent.

(2) Violations:

(i) Making or causing to be made, with knowledge, any false or misleading statement on an application for tenancy;

(ii) Violation of a federal, State, or local law that is detrimental to the safety and welfare of other residents in the park; or

(iii) Repeated violation of any rule or provision of the rental agreement occurring within a 6–month period.

■ Parkway appears to argue, however, that despite § 8A–202(c)(2) it can terminate Marmion's month-to-month tenancy without cause and then institute proceedings for Marmion's ouster as a tenant holding over under § 8A–1702. This argument is not persuasive, inasmuch as § 8A–1702 provides a cause of action only against those "who shall *unlawfully* hold over beyond the termination of the rental agreement...." Thus, that section becomes operative only when a tenant is deemed to be *unlawfully* holding over on the premises. Section 8A–1702 does not explain how a tenant becomes an "unlawful holdover." Considering the Mobile Home Parks Act in its entirety, it is clear that if § 8A–202(c)(2) explicitly gives a qualified month-to-month tenant the right to demand a one-year lease, a tenant who does so cannot be considered an unlawful holdover.

■ Section 8A–202(c)(2) provides an additional reason why the grant of summary judgment in favor of Parkway was erroneous. Not only does it give qualified tenants the right to demand a one-year lease, it also placed upon the park owner the burden of *offering* a one-year lease to qualified tenants at the expiration of each one-year term.[6] The language of the statute clearly places the initiative on the park owner to offer the one-year lease. A brief discussion between the parties and the court during the hearing on the motion established that there had been a one-year lease between Marmion and Parkway at one time. It did not establish, however, whether Parkway had offered a

---

Under the language of the statute, a mobile home park tenant may be evicted only for committing one of the four specified grounds for eviction. Moreover, under § 8A–1101(b), the tenant must be given written notice of the grounds for the eviction at least 30 days before the date the tenant is required to vacate the premises. Parkway has not alleged grounds that would entitle it to evict Mr. Marmion under § 8A–1101.

**6.** The relevant portion of § 8A–202(c)(2) provides:
Upon the expiration of each 1–year term ... a park owner shall offer to a qualified resident a rental agreement for a 1–year period.

one-year lease to Marmion at the expiration of that one-year term in accordance with § 8A–202(c)(2). Thus, the grant of summary judgment was also improper for that reason.

 Because the issue will probably surface on remand, we still must determine, however, what rights Marmion has if Parkway had previously offered a one-year lease which Marmion refused and Marmion did not later take the initiative and request a one-year lease from Parkway. Parkway asserts that it was entitled to summary judgment because "there is no evidence before this court that the Appellant *as such* requested Parkway to provide him with a one year lease as required by subsection (2) of 8A–202(c)." (Emphasis added.) Parkway goes on to argue, "[a]bsent this request the Appellant remains a month to month tenant and subject to being terminated at will as provided in Section 8A–1702." Parkway maintains that even if § 8A–202(c) does give qualified month-to-month tenants the right to demand a one-year lease at any time, the onus is on the tenant to request such a lease *before* the park owner decides not to renew the tenancy. We agree with Parkway's view of the law. We note, however, that the record does not establish whether Marmion requested the one-year lease.

Section 8A–202(c)(2) plainly imposes on the park owner an obligation to offer a one-year lease only to year-to-year tenants. The provision also clearly imposes the burden of *requesting* a year-to-year lease on the month-to-month tenant. We find nothing in § 8A–202(c)(2) to prevent a park owner from terminating a month-to-month tenancy if there has not been a request for a one-year lease by the tenant.

 We reject Marmion's claim that § 8A–1101, which prescribes four grounds upon which a tenant may be evicted, gives a tenant who is otherwise qualified the right to remain on the premises in perpetuity as a month-to-month tenant. Marmion argues that inasmuch as § 8A–1101 does not specifically provide for the eviction of tenants as "holdovers," a tenant may not be evicted on such grounds. From

this omission, Marmion suggests that his month-to-month tenancy can be terminated only for cause.

This contention ignores § 8A–1702 which specifically provides a cause of action against tenant holdovers. Contrary to Marmion's claim, we discern nothing in the statute that indicates § 8A–1702 was not intended to provide a substantive right to evict tenants who unlawfully hold over on the premises beyond the expiration of the lease term. As a matter of statutory construction, we will not interpret § 8A–1101 so as to virtually nullify § 8A–1702. "Statutes dealing with the same subject matter should, when possible, be read together and harmonized." *Kaczorowski v. City of Baltimore,* 309 Md. at 511, 525 A.2d 628.

Our decision in this regard is also supported by the very existence of § 8A–202(c)(2). If we accept Marmion's argument that a qualified month-to-month tenant may remain on the premises under a perpetual month-to-month tenancy, a tenant's statutory right to demand a one-year lease under 202(c)(2) becomes largely irrelevant. If a tenant was entitled to stay on the premises in perpetuity as a month-to-month tenant, there would be little or no incentive for a tenant to bind himself to a longer lease term of one year as envisioned by § 8A–202(c).

We find it improbable that the legislature would have enacted § 8A–202(c) in 1985 giving certain tenants the right to demand a one-year lease if § 8A–1101, which already existed and which specified the grounds for which a tenant may be evicted, prevented a mobile park owner from refusing to renew a tenant's lease. It is much more likely that until enactment of § 8A–202(c), a park owner could refuse to renew a lease, and then file suit to oust the tenant as a holdover under § 8A–1702, despite § 8A–1101. Indeed, that interpretation is supported by the dicta in *Cider Barrel.* Inasmuch as § 8A–202(c) created only the right to demand a one-year lease, we find no support in the Act for Marmion's claim that he is entitled to remain a month-to-month tenant in perpetuity.

In summary, we must reverse the grant of summary judgment and remand for further proceedings. On remand, it must be determined whether:

(1) Parkway offered Marmion a one-year lease at the expiration of Marmion's earlier one-year lease; or

(2) Marmion requested a one-year lease.

If Marmion is a qualified tenant and Parkway failed to offer a one-year lease at the expiration of Marmion's one-year lease, it must do so. Marmion must be given a chance to accept or refuse the lease; only if he refuses the lease can he be evicted as an unlawful holder following the procedures of § 8A–1702. Moreover, if the court finds Marmion requested a one-year lease before Parkway terminated the rental agreement, Marmion is entitled to that lease and may not be evicted except for the reasons provided in § 8A–1101.

SUMMARY JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.