775 P.2d 1287

**SOUTHWEST COMMUNITY HEALTH SERVICES, a non-profit corporation, PRESBYTERIAN HOSPITAL DIVISION, Plaintiff–Appellee,**

v.

**SAFECO INSURANCE COMPANY, Defendant–Appellant–Cross–Claimant,**

v.

**Thomas L. DAY, Defendant–Cross–Defendant.**

**No. 17546.**

Supreme Court of New Mexico.

June 26, 1989.

Ruud, Wells & Mande, Deborah H. Mande, Albuquerque, for defendant-appellant-cross-claimant.

Watrous & Reardon, Thomas S. Watrous, Elizabeth Losee, Albuquerque, for plaintiff-appellee.

OPINION

SOSA, Chief Justice.

Defendant-appellant, Safeco Insurance Company (Safeco), appeals the trial court's summary judgment, granted to plaintiff-appellee, Southwest Community Health Services (Southwest), on December 7, 1987. Judgment was in the amount of $15,000 plus attorney's fees and costs. Southwest operates a hospital which furnished medical services to defendant-appellant, Thomas L. Day (Day). Day was involved in an automobile accident caused by Marshall Graybill, not a party. Safeco insured Graybill. Day incurred some $60,000 in medical ex-

penses during his two-month stay in the hospital.

On February 25, 1981, in conformity with NMSA 1978, Section 48-8-2(A) (Repl.Pamp. 1987), Southwest filed its notice of lien with the clerk of the court. On March 2, 1981, a copy of Southwest's notice was received at Safeco's local office in Albuquerque. Safeco's home office is located in Seattle, Washington, but Southwest did not mail a copy of the notice to the home office, as called for by Subsection (C) of Section 48-8-2. On October 31, 1981, Safeco's adjustor, Jack Owens (Owens), who had handled Day's claim, died. On April 2, 1982, Safeco settled Day's claim against Graybill for the policy limits, $15,000. On June 22, 1982, Safeco representatives found in Owens' files a copy of the notice which Southwest had sent to Safeco in March, 1981. Southwest was unable to collect from Day for the charges which he had incurred, and demanded payment from Safeco. When Safeco refused, the present lawsuit ensued.

On appeal, Safeco contends that the provisions of the hospital lien statute (NMSA 1978, Sections 48-8-1 to 48-8-7) must be strictly construed. Because Southwest did not comply with the provisions of the statute, by not mailing a copy of the notice of lien to Safeco's home office, Southwest's lien never attached. Safeco argues further that it never received actual notice of the lien. Safeco contends that the trial court also erred by not deducting Day's attorney's fees from the sum of $15,000.

In response, Southwest argues that Safeco had actual notice of the lien, in that Owens told Southwest's office personnel to send any information relating to Day's charges to Safeco's Albuquerque office, and Southwest did just that. Southwest points to deposition testimony of one Bonnie Gomez to the effect that Owens admitted he had received notice of the lien and that he feared Safeco might have to pay twice for Day's claim. Further, Southwest argues that Safeco did not prove Day's attorney's fees, and thus Safeco did not carry the burden of proving how much

should be deducted from the judgment of $15,000.

The statute at issue reads, in pertinent part, as follows:

No hospital lien is effective upon damages recovered for personal injuries unless:

. . . .

C. the hospital mails a copy of the written notice [of lien] by certified mail with return receipt requested to the home office of any insurance carrier that has insured the person [alleged to be liable to the injured party for the injuries received] * * *.

NMSA 1978, § 48-8-2.

With respect to the issue of attorney's fees, the statute reads, in pertinent part as follows:

Every hospital located within the state * * * is entitled to assert a lien upon that part of the judgment, settlement or compromise going, or belonging to such patient, less the amount paid for attorneys' fees, court costs and other expenses necessary thereto in obtaining the judgment, settlement or compromise * * *.

NMSA 1978, § 48-8-1(A).

This is the first time we have construed the "home office" provision of Section 48-8-2(C). Cf. Storey v. University of New Mexico Hosp., 105 N.M. 205, 730 P.2d 1187 (1986). Safeco argues that because statutory liens are in derogation of the common law, they must be strictly construed. Further, Safeco contends that the parties by course of conduct or agreement cannot waive the strict notice provisions. Thus, despite what Owens may have told Southwest's office personnel, Southwest was nonetheless strictly required to mail its notice of lien to Safeco's home office in Seattle, and not to Safeco's Albuquerque office.

Southwest, on the other hand, contends that the lien was created as a matter of law when Safeco's Albuquerque office received actual notice of the lien on March 2, 1981,

and thus when Safeco settled with Day, Safeco did so at its peril, and by the provisions of NMSA 1978, Section 48-8-3(A), Safeco is liable to Southwest for any amount it paid to Day. Southwest argues, "More than a year after receipt of the lien, with the hospital lien sitting in its file, Safeco settled Mr. Day's claim with Day and his attorney for policy limits, paying $15,000 free of the lien." Southwest argues that to construe the statute as Safeco would have it construed would be to defeat the legislative intent.

On appeal, we affirm the summary judgment in its entirety. Although Southwest did not strictly comply with the statutory notice provision, it nonetheless substantially complied, and it did so based on information given it by Safeco's agent, Owens. Southwest was entitled to rely on Owens' assurances to send information concerning Day's expenses to the Albuquerque office, and, because of Owens' assurances, Safeco is estopped to deny that it had actual notice of Southwest's claim of lien. Absent reliance and estoppel, or absent other mitigating factors relieving a party in Southwest's position from strict compliance with the statute, we well may have reached a different result. In the present factual setting, however, the weight of authority leads us to conclude that substantial rather than strict compliance satisfies the legislative intent. *See* Annotation, *Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery From Tortfeasor Causing Patient's Injuries,* 25 A.L.R.3d 858 (1969); 51 Am.Jur.2d *Liens* § 39 (1970); *cf. Rolla Community Hospital v. Dunseith Community Nursing Home,* 354 N.W.2d 643 (N.D.1984) (insurer had actual notice under a statute providing for constructive notice of filed hospital lien but settled with injured claimant and disbursed funds free of the lien). We will not give a statute its literal reading if such a reading leads to an unjust result. *Wells v. County of Valencia,* 98 N.M. 3, 644 P.2d 517 (1982). Here Southwest should not be denied payment by Safeco merely because it mailed its claim of lien to Albuquerque rather than Seattle, especially after Safeco's agent assured Southwest that the Albuquerque office was sufficient for serving notice upon Safeco.

As for attorney's fees, Safeco filed a requested finding of fact in which it asserted that Day's attorney, having negotiated a settlement with Safeco, "retained a fee in an amount of which he has no record or recollections. The remainder of the [settlement] after subtracting the fee was paid over to [Day]." Safeco thus admits that there was no evidence before the court as to what amount in attorney's fees, if any, should be deducted from the sum of $15,-000. Since Safeco did not carry its burden of proof on this issue, the court was correct to find against Safeco on attorney's fees. *See J.A. Silversmith, Inc. v. Marchiondo,* 75 N.M. 290, 404 P.2d 122 (1965).

For the following reasons we affirm the judgment of the trial court.

IT IS SO ORDERED.

SCARBOROUGH, RANSOM and BACA, JJ., concur.