871 P.2d 985

**In the Matter of the CONSERVATOR-SHIP AND GUARDIANSHIP OF Gale Ora PULVER.**

No. 13617.

Court of Appeals of New Mexico.

Feb. 4, 1994.

Certiorari Denied March 18, 1994.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for appellee Karen Brininstool.

Wayne A. Jordon, Law Office of Wayne A. Jordon, Alamogordo, for appellant Gale Ora Pulver.

## OPINION

CHAVEZ, Judge.

Gale Pulver (Pulver) appeals from the trial court's judgment naming his daughter, Karen Brininstool (Brininstool), as his guardian and conservator of his estate. On appeal, Pulver asserts that the trial court lacked jurisdiction; erred by not disqualifying Brininstool's attorney; failed to follow mandatory procedures in the guardianship proceeding; and erred by failing to set aside the final judgment as to the conservatorship. Other issues raised in the docketing statement but not briefed are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985). In addition, this Court ordered the parties to brief the issue of whether the transcript preparation costs can properly be deemed an administrative expense of Pulver's estate. Finding no reversible error, we affirm, and we hold that Pulver's transcript preparation costs are an administrative expense of his estate.

## FACTS

Pulver suffers from multiple sclerosis and is legally blind. On three separate occasions, Brininstool has sought to be appointed as Pulver's guardian and conservator of his estate. The first occasion arose on June 17, 1988, as an action by Pulver and Brininstool, as co-petitioners. Attorney W.T. Martin (Martin) represented both Pulver and Brinin-

stool in this first petition. At this time, without a hearing, the trial court entered an order appointing Brininstool as guardian and conservator of Pulver.

Approximately two months later, Pulver filed a petition to terminate the guardianship and conservatorship. A hearing was held on October 19 and 20, 1988, in which both parties acknowledged that procedural defects invalidated the June 17, 1988 appointment of Brininstool as guardian and conservator of Pulver. Thereafter, on March 24, 1989, a second hearing regarding the appointment of Brininstool as guardian and conservator was held. As a result of this hearing, the court again appointed Brininstool as guardian and conservator for Pulver. In the same judgment, the court discharged Pulver's guardian ad litem.

In October 1989, Pulver filed a motion to declare the March 24, 1989 final judgment void for failure to give him personal notice of the hearing as required by statute. Pulver also filed a motion to disqualify Martin from representing Brininstool in the case, since Martin had filed the original petition on behalf of Brininstool and Pulver. In addition, Pulver filed motions seeking to have Wayne A. Jordon (Jordon) appointed as guardian ad litem and to allow Pulver to hire an independent psychologist and have the conservator pay for his expenses. The court denied Pulver's motion to set aside the final judgment. However, the court appointed Jordon as Pulver's guardian ad litem and allowed Pulver to hire an independent psychologist to be paid by the conservator.

In July 1990, Pulver's mother sought to have the final judgment appointing Brininstool as guardian and conservator set aside because she did not receive notice as required by law. On August 24, 1990, the trial court agreed with Pulver's mother and ordered that the final judgment as to the guardianship should be set aside, deferred ruling on the motion to set aside the conservatorship until further evidence was taken on the matter, and denied Pulver's motion to disqualify Martin from representing Brininstool.

Thereafter, Brininstool began her third effort to be appointed as guardian and conservator for Pulver by filing an amended petition. The matter proceeded to trial on July 29 and 30, 1992. At trial, evidence was presented from both parties, and the guardianship and conservatorship issues were fully litigated. After hearing the evidence, the court appointed Brininstool as Pulver's guardian and continued her status as conservator of his estate. Pulver appeals from this decision.

## DISCUSSION

Pulver raises several issues on appeal. Although he prefaces his brief with an acknowledgement of the procedural nature of all of his arguments, he urges this Court to recognize the "real human reason for this appeal": that Pulver does not want Brininstool to be his guardian or conservator. We note that the provisions in the New Mexico Probate Code for appointment of a guardian for an incapacitated person do provide some opportunity for choice or preference by the incapacitated person. See NMSA 1978, § 45–5–311(B)(2), (C)(1) (Repl.Pamp.1993). The same is true of the provisions for appointment of a conservator. See NMSA 1978, §§ 45–5–410(A)(2), (3); (C)(1) (Repl. Pamp.1993). The provisions for choice or preference are not as liberal as the provision for appointment of a minor's guardian. See NMSA 1978, § 45–5–206 (Repl.Pamp.1993) ("The court shall appoint a person nominated by the minor, if the minor is fourteen years of age or older, unless the court finds the appointment contrary to the best interests of the minor."). This case suggests there may be situations in which an incapacitated person ought to have more choice in the selection of a guardian or conservator. Nevertheless, that decision is one for the legislature, rather than this Court.

In evaluating the specific issues raised on appeal, we are immediately struck with the fact that none of the asserted errors resulted in any prejudice to Pulver. Pulver was well aware of the issues to be litigated, he actively participated in the litigation, and the matter was litigated three times, each time with the same result. In order for error to be reversible, it must be prejudicial. *State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695,

697 (Ct.App.1972). On appeal, error will not be corrected if the correction will not change the result. *Wright v. Brem,* 81 N.M. 410, 411, 467 P.2d 736, 737 (Ct.App.1970). We hold that the issues raised by Pulver do not amount to reversible error.

### I. FAILURE OF BRININSTOOL TO OBTAIN LEAVE OF THE TRIAL COURT TO FILE AN AMENDED PETITION

■ After the trial court's oral ruling vacating the second order appointing Brininstool, Brininstool filed an amended petition, and the matter was ultimately tried on this amended petition. Pulver asserts that the trial court lacked jurisdiction because it did not enter an order allowing Brininstool to file an amended petition pursuant to SCRA 1986, 1–015(A) (Repl.1992). However, SCRA 1–015(A) provides that permission to amend a pleading need not be obtained if the pleading is one to which no responsive pleading is permitted, the action has not been placed on the trial calendar, and the amendment is made within twenty days after the pleading is served. In this case, no responsive pleadings were contemplated, *see* NMSA 1978, § 45–5–303 (Repl.Pamp.1989); at the time of the filing of the amended pleading, no hearing had been set, and therefore the action was not placed on the trial calendar; and the reason that the order appointing Brininstool was vacated was that the petition had not been served. Thus, Brininstool was permitted to file her amended petition without permission of the trial court pursuant to SCRA 1–015(A).

### II. FAILURE TO DISQUALIFY MARTIN AS ATTORNEY FOR BRININSTOOL

■ Pulver argues that the trial court erred by failing to disqualify Martin from representing Brininstool because Martin represented both Pulver and Brininstool in the initial guardianship and conservatorship proceeding. "A motion to disqualify opposing counsel should be filed at the onset of the litigation, or 'with promptness and reasonable diligence once the facts' upon which the motion is based have become known." *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 244, 629 P.2d 231, 320 (1980) (footnote omitted), *appeal dismissed and cert. denied,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Pulver petitioned to terminate the conservatorship and guardianship on August 12, 1988. Thereafter, Martin responded and subsequently filed several documents on behalf of Brininstool. During this time, the trial court entered a final judgment appointing Brininstool guardian of Pulver and conservator of his estate. Despite these actions, Pulver did not seek to disqualify Martin until October 25, 1989, more than a year after Martin filed his initial document with the trial court on Brininstool's behalf. Because Pulver failed to act promptly in setting forth his motion to disqualify Martin, the trial court's denial of Pulver's motion was not an abuse of discretion. *See Bobrick v. State,* 83 N.M. 657, 658, 495 P.2d 1104, 1105 (Ct.App.1972) (denial of defendant's motion to dismiss counsel was not an abuse of discretion). In addition, we decline to reverse a judgment that was not tainted by Martin's conflict and that is otherwise supported by the evidence. *See United Nuclear Corp.,* 96 N.M. at 246, 629 P.2d at 322.

### III. TRIAL COURT'S FAILURE TO SET ASIDE CONSERVATORSHIP

■ Pulver contends that the trial court erred in failing to set aside the conservatorship because Brininstool failed to give the required statutory notice to Pulver's mother, Beatrice Pulver. In July 1990, Beatrice filed a motion to have the March 24, 1989 final judgment, appointing Brininstool as guardian and conservator, set aside because she did not receive notice of this hearing as required by statute. On August 24, 1990, the trial court ruled in favor of Beatrice and found that the March 24, 1989 final decree was void as to the guardianship. However, the trial court withheld ruling whether the final decree was void as to the conservatorship until evidence could be taken on the matter. The trial court withheld ruling on this matter until the July 29 and 30, 1992 trial in which the court continued Brininstool's status of conservator of Pulver's estate.

We disagree with Pulver's argument that the court failed to set aside the conservator-

ship. Although the trial court failed to expressly set aside the conservatorship in its August 24, 1990 order, subsequent actions by the court indicate that the conservatorship was in fact set aside. This conclusion is supported by the fact that the issues of guardianship and conservatorship were fully litigated. In fact, the court ruled on the issue of the conservatorship in its decision. The court did not have to make this ruling if it had failed to set the earlier order aside. Therefore, this issue is affirmed.

### IV. JURISDICTIONAL CHALLENGE TO THE COURT'S FAILURE TO STRICTLY ADHERE TO GUARDIANSHIP STATUTES

■ Pulver asserts that Brininstool's failure to personally serve him notice of the hearing, the trial court's apparent failure to appoint a qualified health care professional (professional), the court's failure to have that professional submit a written evaluation of Pulver, and the admittance of hearsay contrary to the New Mexico guardianship statutes deprived the trial court of jurisdiction to appoint a guardian. Pulver correctly asserts that a guardianship proceeding is purely statutory, and under most circumstances there must be strict compliance with those statutory requirements. *Blevins v. Cook,* 66 N.M. 381, 389, 348 P.2d 742, 747 (1960). In addition, we agree with Pulver that the utmost care must be taken in proceedings that deprive a citizen of his fundamental liberties. *Id.*

However, we disagree with Pulver that a failure to strictly comply with the requirements of the guardianship statutes deprived the trial court of jurisdiction. We are also satisfied that the trial court took the utmost care at trial to ensure that the purposes of the guardianship statutes were substantially complied with by the parties.

Pulver cites *Blevins* for the proposition that proceedings to adjudicate a person incompetent, insane, or mentally ill must be in strict accordance with the statutory requirements, and where required procedure is not followed, the proceedings are void and of no effect. *Blevins,* 66 N.M. at 389, 348 P.2d at 747. In *Blevins,* the son of the declared incompetent asserted that the sale of the incompetent's land by his father's guardian was invalid because the proceedings which declared his father incompetent were void for failure to follow statutory provisions. The Court reviewed the procedure followed in declaring the father incompetent and found that the procedure "in no way resembles either that for adjudicating incompetency under § 32–3–1, NMSA 1953, or that providing for hospitalization as provided in § 34–2–5, NMSA 1953." *Id.* at 387, 348 P.2d at 746. The Court in essence found that none of the statutory requisites for declaring a person incompetent were followed.

We hold that *Blevins* is factually distinguishable from the case at hand. In *Blevins* the parties failed to follow virtually any of the statutory requisites. Furthermore, the actions taken by the parties failed to satisfy the purpose of the statutes. In addition to statutory procedures not being followed, at trial, the alleged incompetent's attorney failed to contest the issues of interest to the alleged incompetent. In contrast, under the unique facts of this case, although the guardianship statutes were not strictly followed, the purposes of the guardianship statutes were met, and the issues were vigorously litigated at trial.

In similar fashion, this case is distinguishable from *In re Ronald A.,* 110 N.M. 454, 797 P.2d 243 (1990). In that case, as in *Blevins* but in contrast to this case, there were a number of serious departures from proper procedures that cumulatively affected the father's opportunity to appear and defend in a matter that proposed to take away his important personal rights. Although there were departures in this case, they did not have the effect of depriving Pulver of an opportunity to defend on the merits. Indeed, Pulver had at least two opportunities to defend on the merits, and he and his counsel availed themselves fully of both.

Thus, we believe that it is appropriate in this case to focus on substantial compliance with the specific statutes alleged to be violated here, rather than on strict compliance. We are supported in this view by *Southwest Community Health Servs., Presbyterian Hosp. Div. v. Safeco Ins. Co.,* 108 N.M. 570, 572, 775 P.2d 1287, 1289 (1989), and *Mayfield v. Mayfield,* 108 N.M. 246, 249, 771 P.2d 179, 182 (1989). In *Safeco,* the Court said that it

would not give a notice statute, with which there was supposed to be strict compliance, a literal reading when such would lead to an unjust result. *Safeco,* 108 N.M. at 572, 775 P.2d at 1289. In *Mayfield,* the Court stated that in the right circumstances showing substantial compliance, it "would be loath to exalt form over substance to foreclose the adjudication of a claim on its merits." *Mayfield,* 108 N.M. at 249, 771 P.2d at 182.

▮ What these cases show is that each case alleging noncompliance with statutory procedures must be reviewed to determine the degree of harm occasioned by the noncompliance. In short, not every failure to comply with mandatory statutory language deprives a court of jurisdiction.

Recently, this Court in *In re Adoption of Webber (Webber v. Webber),* 116 N.M. 47, 859 P.2d 1074 (Ct.App.), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993), addressed an argument similar to Pulver's. In *Webber,* the appellant argued that the trial court lacked jurisdiction because the trial court failed to strictly follow the Adoption Act. We rejected the appellant's jurisdictional claim because the appellant's argument went to the merits of the trial court's ultimate decision, and not to whether the trial court had the power to engage in the decisionmaking process. We stated, "[T]he jurisdiction of a district court does not depend on how the court decides a contested issue submitted to it; the test 'is whether or not it had power to enter upon the inquiry; not whether its conclusion * * * was right or wrong.'" *Webber,* 116 N.M. at 50, 859 P.2d at 1077 *quoting Sundance Mechanical & Utility Corp. v. Atlas,* 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990) (quoting *State v. Patten,* 41 N.M. 395, 399, 69 P.2d 931, 933 (1937)). Similarly, we conclude that Pulver's argument is not jurisdictional; rather, it goes to the merits of the trial court's ultimate decision. It is to those merits that we now turn.

## V. SUBSTANTIVE CHALLENGE TO THE TRIAL COURT'S FAILURE TO STRICTLY ADHERE TO GUARDIANSHIP STATUTES

### A. Personal Notice to Pulver

▮ Although Pulver incorrectly argued that a failure to strictly follow statutory requirements is a jurisdictional claim, Pulver is correct in asserting that such a failure may substantively invalidate the appointment of Brininstool as Pulver's guardian. Pulver complains that no notice of the trial was personally served upon him in accordance with NMSA 1978, Section 45–5–309(B) (Repl. Pamp.1989). Section 45–5–309(B) states, in pertinent part, that: "Notice shall be served personally on the alleged incapacitated person ... if ... found within New Mexico." It is undisputed that Pulver was not personally served with the notice of hearing. However, notice was sent to Jordon, Pulver's attorney and guardian ad litem.

NMSA 1978, Section 45–1–401(B) (Repl. Pamp.1989) allows a court to provide for a different method of giving notice, for good cause shown. Section 45–5–309(B), on which Pulver relies, would thus be subject to Section 45–1–401(B). Since Pulver cannot see or read, service on his attorney would suffice under the circumstances of this case, particularly when the attorney requested the hearing, insured Pulver's attendance and participation, and vigorously contested the petition. Indeed, it would appear quite pointless to reverse this case on grounds of lack of notice. *See Wright v. Brem,* 81 N.M. at 411, 467 P.2d at 737.

Under these circumstances, Pulver's reliance on *State v. Jody C.,* 113 N.M. 80, 823 P.2d 322 (Ct.App.), *cert. quashed,* 113 N.M. 23, 821 P.2d 1060 (1991), is misplaced. That case involved notice triggering a time limitation, not whether the purpose of notice was served by the manner of giving it, as this case involves. Therefore, for the above reasons, we conclude that no reversible error resulted from Pulver's not being personally served with notice of the hearing.

### B. Qualified Health Care Professional Appointment and Written Evaluation of Pulver

▮ Pulver argues that the trial court was divested of jurisdiction to enter a decree appointing a guardian when it failed to appoint a professional to evaluate his physical

condition and failed to require that professional to submit a written evaluation of Pulver. We hold that the trial court substantially complied with the sections regarding the appointment of a professional and the professional's written evaluation of Pulver and reversal of these issues would lead to an unjust result.

NMSA 1978, Section 45–5–303(D) (Repl. Pamp.1989) states, in pertinent part, that: "[t]he person alleged to be incapacitated shall be examined by a qualified health care professional appointed by the court who shall submit his evaluation in writing to the court." A "'qualified health care professional' means a physician or nurse practitioner whose training and expertise aid in the assessment of functional impairment." NMSA 1978, Section 45–5–101(T) (Repl.Pamp.1989). We believe that the purpose of Section 45–5–303(D) is to ensure that the court has the necessary medical and mental evaluations needed in a guardianship case. In this case, the trial court did not on its own initiative appoint a qualified health care professional. However, the court heard testimony about Pulver's medical and mental status from Linda Smith, a qualified professional registered nurse. Section 45–5–101(T) specifically uses the phrase "nurse practitioner whose training and expertise aid in the assessment of functional impairment." Pulver argues that Smith does not qualify as a professional because she is not "certified" as "certified nurse practitioner" is defined in the Nursing Practice Act, NMSA 1978, Section 61–3–3(H) (Repl.Pamp.1989). We disagree with Pulver's argument that the Nursing Practicing Act is controlling in this situation.

The record reveals that Smith was one of two nurses who were responsible for Pulver's care on a daily basis. At trial, Smith testified as to Pulver's medical and mental condition. Clearly, Smith's training and experience as a nurse as well as her close oversight of Pulver aided the trial court in its assessment of Pulver's functional impairment. As a result, the court did not err by finding that Smith is a professional and that her testimony substantially complies with the statutory requirement.

Furthermore, on Pulver's request, the court appointed Dr. Marc Caplan, a licensed psychologist, to examine Pulver. The record further reveals that Dr. Caplan examined Pulver in accordance with Section 45–5–303(D), and that his findings were communicated to the trial court in the form of trial testimony. The fact that the court did not appoint Dr. Caplan on its own initiative did not prevent the purpose of the statute from being carried out.

Pulver also argues that Section 45–5–303(D) mandates that the professional submit a written evaluation of Pulver. The record reveals that Pulver's Veterans Administration evaluations were admitted into evidence without objection. These evaluations contain in-depth information which apprised the trial court about Pulver's medical and mental condition. Furthermore, Dr. Caplan's testimony supports the Veteran's Administration evaluations. As stated earlier, the purpose of the guardianship statutes is to ensure that the court is fully informed about the mental and medical condition of the alleged incapacitated person. The evaluations, together with the testimony of the nurse and the testimony of the psychologist, all of which unqualifiedly supported the appointment of a guardian and conservator for Pulver, fulfilled the statutory intent.

We hold that the record supports Brininstool's argument that the trial court ensured that the guardianship statutes concerning the appointment of a professional as well as the written evaluation were substantially complied with by the parties. In addition, we fail to see how Pulver was prejudiced or how the result would be different if the trial court decision was reversed. *See State v. Wright*, 84 N.M. at 5, 498 P.2d at 697; *Wright v. Brem*, 81 N.M. at 411, 467 P.2d at 737. Accordingly, we affirm on these issues.

*C. Hearsay Evidence Issue*

■ Pulver argues that the trial court was divested of jurisdiction when it allowed hearsay testimony in violation of Section 45–5–303(H). Brininstool argues that the statements were offered for other reasons than to prove the truth of the matter asserted. Without deciding whether the statements

were hearsay, they amounted to a minuscule proportion of the evidence in the case, there was overwhelming other sufficient credible evidence to substantiate the trial court's decision to appoint Brininstool as guardian and continue her appointment as conservator, and it does not appear that the trial court relied on these statements in any event. *See In re Doe,* 89 N.M. 700, 703, 556 P.2d 1176, 1179 (Ct.App.) (erroneous admission of evidence is not reversible error in a nonjury proceeding unless it appears that the court must have relied on it), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976); *see also State v. Wright,* 84 N.M. at 5, 498 P.2d at 697; *Wright v. Brem,* 81 N.M. at 411, 467 P.2d at 737.

## VI. THE COST OF THE TRANSCRIPT IS A PROPER ADMINISTRATIVE COST OF PULVER'S ESTATE

This Court ordered counsel to brief whether or not transcript preparation costs can be deemed an administrative expense of Pulver's estate. Brininstool correctly states that necessary charges incurred in good faith in proceedings to restore the capacity of a person adjudged incapacitated are generally chargeable against the person or his estate. *See Jochems v. Warnick,* 168 Kan. 657, 215 P.2d 166, 169 (1950); *Flessas v. Marine Nat'l Exchange Bank,* 8 Wis.2d 32, 98 N.W.2d 430, 433–34 (1959); *Carter v. Beckwith,* 128 N.Y. 312, 28 N.E. 582, 583–85 (1891). Brininstool argues that this appeal was not in good faith.

We disagree. This multi-issue appeal raised several issues regarding the interpretation of statutes dealing with guardians of incapacitated persons, NMSA 1978, Sections 45-5-301 to –315 (Repl.Pamp.1989), as well as statutes dealing with the protection of property of persons under disability, NMSA 1978, Sections 45-5-401 to –433 (Repl. Pamp.1989). In addition, the lack of strict statutory compliance provided a basis for appeal. Under these circumstances, we conclude that Pulver's appeal is in good faith. Therefore, the costs of the transcript are considered an administrative expense and are charged against Pulver's estate.

## CONCLUSION

In summary, the trial court's decree appointing Brininstool as Pulver's guardian and conservator of his affairs is affirmed. Additionally, Pulver's transcript preparation costs are deemed an administrative expense of his estate.

**IT IS SO ORDERED.**

MINZNER, C.J., and PICKARD, J., concur.