918 P.2d 1317

**GREEN VALLEY MOBILE HOME PARK, Plaintiff–Appellee,**

v.

**Paul MULVANEY and Sachi Mulvaney, Defendants–Appellants.**

No. 23043.

Supreme Court of New Mexico.

May 30, 1996.

Rehearing Denied June 25, 1996.

Legal Aid Society of Albuquerque, Inc., Jane Yee, James Orgass, Albuquerque, for Appellants.

Thompson, Kushner & Rhoades, Randall L. Thompson, Albuquerque, for Appellee.

## OPINION

RANSOM, Justice.

1. Green Valley Mobile Home Park sued Paul and Sachi Mulvaney, residents of the park, for restitution of a mobile home space and for damages. The Bernalillo County Metropolitan Court granted this relief in a statutory summary proceeding under the Uniform Owner–Resident Relations Act, NMSA 1978, §§ 47–8–1 to –52 (Repl. Pamp.1995), and the Mobile Home Park Act, NMSA 1978, §§ 47–10–1 to –23 (Repl. Pamp.1995). *See* §§ 47–8–42, –43, and 47–10–4 (proceedings for restitution). The Mulvaneys appealed to the Second Judicial District Court, claiming that the absence of a good-cause statement in the owner's notice to quit deprived the court of subject-matter jurisdiction to grant restitution.[1] The district court affirmed the metropolitan court and

---

1. The issue is not one of subject-matter jurisdiction. While Green Valley may have failed to meet an "essential element of a statutory cause

of action," a "mandatory precondition to a claim for relief," or a "condition precedent that must be performed before the owner's right of restitu-

the Mulvaneys appeal. Holding that the notice provisions of the Mobile Home Park Act require strict compliance, we reverse.

2. *Facts and proceedings.* The Mulvaneys began a month-to-month tenancy under a written lease with Green Valley Mobile Home Park in September 1991. As with most residents of mobile home parks, the Mulvaneys own their mobile home, but rent the space upon which the home rests. Within three months after the Mulvaneys had moved into the park, Green Valley's manager notified the Mulvaneys that the area around their home was not maintained properly. Through several written notices, Green Valley complained of inoperable vehicles parked on the rental property, piles of trash in and around the vehicles, and a load of manure left on the lot. There was also oral communication between Green Valley and the Mulvaneys about these complaints. The Mulvaneys made efforts to cure the problems by repairing one of the vehicles and placing much of what was around the home in a shed. Green Valley was cited by the county, however, for environmental hazards in the park. There was some suggestion that the violations were attributable to the Mulvaneys.

3. On April 26, 1994, Green Valley gave the Mulvaneys a thirty-day notice to quit their tenancy, allowing them until the end of May to vacate the space. Green Valley used a form specifically tailored to comply with the Uniform Owner–Resident Relations Act for notice of termination of a month-to-month tenancy without cause. This form did not contain a place for the landlord to state the cause of the termination, and Green Valley did not include the cause of the termination on the form. The Mulvaneys, however, did receive a letter on May 2 in which Green Valley demanded that the Mulvaneys take with them "all [their] trash and garbage that [was] piled behind [their] home."

4. Green Valley sued to enforce the termination on June 3, 1994. The metropolitan court heard the case on its merits and granted Green Valley restitution of the mobile home space and attorney's fees. The Mulvaneys appealed to the district court, and the latter reviewed the record from metropolitan court and satisfied itself that there was substantial evidence to support the lower court's decision that the Mulvaneys had actual notice of the reason for the termination of the tenancy. The district court concluded that

> the notice given was legally sufficient and the notice given was in substantial compliance with the statutes. I am also satisfied that there is sufficient evidence to support just cause for eviction. Additionally, as a matter of law, I do not believe that NMSA 1978, § 47-10-3 precludes the termination of a tenancy without just cause if a valid lease provision provides for other methods of termination, such as the giving of notice after a certain interval of time.

The "other method of termination" alluded to by the court is apparently Section 47-8-37(B) of the Owner–Resident Relations Act which provides that "[t]he owner or the resident may terminate a month-to-month residency by a written notice given to the other at least thirty days prior to the periodic rental date specified in the notice."

5. *Issues.* The facts in this case are largely undisputed, and the basic question presented on appeal is whether the district court erred in finding that Green Valley had met the notice requirements contained in the Mobile Home Park Act for the termination of a mobile home tenancy. To answer this question, we first must determine whether the Act requires good cause for the termination of a month-to-month tenancy, and if this cause must be stated in the notice to quit. If we find that the Act does require that good cause be stated in the notice, we then must determine whether the legislature intended by the language of the Act to dictate substantial or strict compliance with this notice requirement.

---

tion accrues," we are satisfied that the lower courts had subject-matter jurisdiction to hear the case. *See, e.g., Govich v. North Am. Sys., Inc.,* 112 N.M. 226, 230, 814 P.2d 94, 98 (1991);

*Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 687–91, 789 P.2d 1250, 1254–58 (1990).

■ 6. *Notice of good cause is required in termination of tenancy.* The Mobile Home Park Act was passed by the legislature in 1983, and in many ways it supplements the Owner–Resident Relations Act. The Mobile Home Park Act specifically provides that the Owner–Resident Relations Act shall apply to mobile home park owners and residents when the Owner–Resident Relations Act is not in direct conflict with the Mobile Home Park Act. Section 47–10–18. Since a month-to-month tenancy may be terminated under the Owner–Resident Relations Act without cause, Section 47–8–37(B), we must decide whether that provision is in direct conflict with the Mobile Home Park Act, specifically Sections 47–10–3 and 47–10–5 which provide in relevant part that no tenancy in a mobile home park shall be terminated until a written notice to quit has been served "in the form specified in this section." Section 47–10–3. The specified form of notice mandates a statement of "the reason for the termination of the tenancy and the date, place and circumstances of any acts allegedly justifying the termination." Section 47–10–3(A)(5).

7. If a reason for termination of a month-to-month mobile-home-park tenancy must be given, that reason must be one of the reasons specified in the Mobile Home Park Act. Section 47–10–5 provides that a mobile-home-park tenancy may be terminated *only* for one or more specified reasons: (A) failure to comply with local and state laws and regulations concerning mobile homes, (B) conduct annoying to other tenants or interference with park management, (C) failure to comply with properly established rules and regulations of the park, or (D) condemnation or change of use of the park. Green Valley argues, however, that since month-to-month tenancies are not mentioned specifically in the Mobile Home Park Act, the relevant provisions of the Owner–Resident Relations Act apply to the termination of month-to-month tenancies.

8. Section 47–10–3(A) of the Mobile Home Park Act states that

No tenancy or other lease or rental occupancy of space in a mobile home park shall commence without a written lease or rental agreement, and *no tenancy* in a mobile home park *shall be terminated until a notice to quit has been served.* The notice to quit shall be *in writing* and *in the form specified* in this section. The form of notice shall be deemed legally sufficient if it states:

(1) the name of the landlord or of the mobile home park;

(2) the mailing address of the property;

(3) the location or space number upon which the mobile home is situated;

(4) the county in which the mobile home is situate; and

(5) the reason for the termination of the tenancy and the date, place and circumstances of any *acts allegedly justifying the termination.*

(Emphasis added.) Both parties concede that the majority of tenancies in mobile home parks in New Mexico are month-to-month tenancies. If we were to interpret "no tenancy" to exclude written month-to-month tenancies this would substantially reduce the applicability of the Mobile Home Park Act. We believe this would frustrate the legislature's intent of providing heightened protection to mobile home tenants. Section 47–10–3(A) requires a statement of cause on *the* notice to quit, and this conflicts directly with Section 47–8–37(B) of the Owner–Resident Relations Act, which does not require any reason for termination of the tenancy. As we previously noted, the Mobile Home Park Act prevails over the Owner–Resident Relations Act when the provisions of the two acts conflict. Section 47–10–18. Therefore, the Mobile Home Park Act is applicable in this case, and Green Valley was required to include in its notice to quit a statement of the cause justifying the termination. The next question then is whether the Mobile Home Park Act requires strict compliance with its notice provision, or whether substantial compliance is sufficient.

■ 9. *Strict compliance is required.* While the thirty-day notice given to the Mul-

vaneys by Green Valley did not contain a specific reason for the termination of the tenancy, there had been extensive communication, both written and oral, regarding Green Valley's dissatisfaction with the Mulvaneys' maintenance of their rental space. The district court was satisfied by the evidence that the Mulvaneys had given Green Valley good cause to terminate the lease, apparently through annoying conduct or failure to comply with park rules regarding trash. Thus, the district court found that the Mulvaneys had actual notice of good cause for termination and concluded that Green Valley substantially complied with the Mobile Home Park Act.

10. Green Valley correctly asserts that there are situations in which the ends of justice are furthered by accepting substantial compliance, and not requiring strict compliance, with mandatory language of a statute. In *Mayfield v. Mayfield*, 108 N.M. 246, 249, 771 P.2d 179, 182 (1989), this Court held that blind adherence to statutory language does not always lead to a just result, stating that it "would be loath to exalt form over substance to foreclose the adjudication of a claim on its merits." Green Valley cites *In re Pulver*, 117 N.M. 329, 333–34, 871 P.2d 985, 989–90 (Ct.App.), *cert. denied*, 117 N.M. 524, 873 P.2d 270 (1994), to support its position. In *Pulver*, the Court of Appeals held that substantial compliance with the procedures of a statutory guardianship was sufficient to give the court jurisdiction over the matter. *Id.* The Court stated that it believed it appropriate to focus on substantial compliance with the specific statutes alleged to have been violated, rather than on strict compliance, because strict compliance would result in an unjust ruling. *Id.* Green Valley urges us to make a similar determination about the injustice of requiring strict compliance with the Mobile Home Park Act.

11. While it is true that strict compliance with a statute is not always necessary to achieve the goals of the legislature, *Aztec Well Servicing Co. v. Property & Casualty Ins., Guar. Ass'n*, 115 N.M. 475, 481, 853

P.2d 726, 732 (1993), it is equally true that many legislative goals require strict compliance. To determine whether strict compliance is required in this factual setting, we must ascertain the intent of the legislature and analyze whether this intent would be frustrated by anything less than strict compliance. *See Southwest Community Health Servs. v. Safeco Ins. Co.*, 108 N.M. 570, 572, 775 P.2d 1287, 1289 (1989); *see also Roth v. Thompson*, 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992) ("The chief aim of statutory construction is to give effect to the intent of the legislature."). We must look to the object the legislature sought to accomplish and the wrong it sought to remedy. *Lopez v. Employment Sec. Div.*, 111 N.M. 104, 105, 802 P.2d 9, 10 (1990). It is the object to be accomplished and the wrong to be remedied that determine the justice or injustice of requiring strict compliance with the Mobile Home Park Act.

12. The object of the Mobile Home Park Act is not expressly stated, but courts in other jurisdictions have examined the object and remedial nature of similar statutes. "The additional protection given a mobile home owner [under the statute] is premised on his inherent vulnerability as a person who owns a home but leases the land on which that home is located." *Marmion v. M.O.M., Inc.*, 75 Md.App. 386, 541 A.2d 659, 661 (1988) (citing *Cider Barrel Mobile Home v. Eader*, 287 Md. 571, 414 A.2d 1246 (1980)). "Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself." *Yee v. City of Escondido*, 503 U.S. 519, 523, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). The difficulty in relocating one's home is not to be underestimated, especially since many of the residents of mobile home parks can ill afford the cost of moving the mobile home.

13. To mitigate the susceptibility of families owning mobile homes to significant harm at the whim of the landlords, the legislature has made the termination of lease agreements more difficult under the Mobile Home Park Act than under the Owner–Resident

Relations Act. Similarly, in *City of Albuquerque v. Brooks*, 114 N.M. 572, 844 P.2d 822 (1992), we held that a federal regulation imposing a "good cause" termination requirement was intended to afford special protection to low-income tenants of subsidized housing. In *Brooks* we recognized that "a tenant in reality has a life tenancy determinable at his choosing, or if he exceeds the income limitations of the program, or by the authority for good cause." *Id.* at 574, 844 P.2d at 824 (quoting Robert S. Schoshinski, *American Law of Landlord and Tenant* § 13:4, at 756 (1980 & Supp.1992)). We cannot say the legislature contemplated that substantial compliance with the good-cause requirement in this Act would provide the special protection against unjustified eviction which is expressed by the clear language of Sections 47–10–3 and 47–10–5 for the benefit of inherently vulnerable mobile home tenants. To require strict compliance would mean only that mobile home park owners must give new written notice of acts allegedly justifying termination should the tenant refuse to comply with earlier notices. Such a requirement does not work an injustice. Therefore, we find, as a matter of law, that a landlord must strictly comply with Section 47–10–3(A)(5) of the Mobile Home Park Act for the notice of termination to be effective.

14. *Conclusion.* We hold that the Mobile Home Park Act requires a landlord to include a statement of good cause on a notice to quit that is given to month-to-month tenants. We further hold that the landlord must strictly comply with this notice requirement. We therefore reverse the district court and remand for entry of judgment for the Mulvaneys.

15. **IT IS SO ORDERED.**

BACA and MINZNER, JJ., concur.