2002-NMCA-096

54 P.3d 91

**CAROL RICKERT & ASSOCIATES,**
**Plaintiff–Appellee,**

v.

**Amy LAW, Defendant–Appellant.**

**No. 21,727.**

Court of Appeals of New Mexico.

June 25, 2002.

Mark A. Glenn, Moses, Dunn, Farmer & Tuthill, P.C., Albuquerque, NM, for Appellee.

Angelica Anaya–Allen, Legal Aid Society of Albuquerque, Inc., Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Amy Law (Tenant) appeals the district court's judgment of restitution in favor of Plaintiff Carol Rickert & Associates (Landlord). Landlord manages the Zia Plaza apartment complex for Patrick Kinsella (Owner). Tenant argues the district court erred in restoring possession of the apartment to Landlord because Landlord failed to give legally sufficient notice of its intent to terminate the tenancy. Tenant also objects to the manner in which the district court addressed Tenant's affirmative defenses to Landlord's petition for restitution. Finally, Tenant objects to the district court's refusal to admit a letter Tenant wanted to introduce in support of her affirmative defenses. We affirm.

### Background

{2} This appeal involves a federal government rent-subsidy assistance program commonly known as the Section 8 housing program. *See* 42 U.S.C. § 1437f (1994 & Supp. V 1999). At the time Tenant and Landlord entered into a residential lease, Tenant was eligible for rent subsidy assistance through the Section 8 housing program, and Owner was willing to participate in the program. Although participation in the Section 8 housing program is voluntary, federal law requires owners who wish to participate in the program to enter into a separate lease addendum with Section 8 tenants, which becomes part of the standard residential lease the parties would have otherwise executed.

*See* 24 C.F.R. § 982.308(f) (2000). The provisions of the lease addendum are controlled by federal law, imposing additional terms and conditions on the parties. *See* 24 C.F.R. § 982.162. In addition to the lease addendum, an owner must also enter into a separate housing assistance payments contract with the local housing authority, which is known as a HAP contract. *See* 24 C.F.R. § 982.305. A HAP contract also imposes additional terms and conditions upon an owner that would not exist if the owner was not participating in the Section 8 housing program.

{3} In accordance with the terms of the Section 8 housing program, Owner entered into a lease addendum with Tenant, which provided that the initial term of the lease would run from April 1, 1999, to March 31, 2000. Owner similarly entered into a HAP contract with the Bernalillo County Housing Authority. The HAP contract had a term corresponding to the term of the lease. The record indicates Owner also entered into other Section 8 leasing agreements with other tenants, but neither Owner nor other Section 8 tenants are parties to this appeal.

{4} By letter dated July 27, 1999, Landlord gave notice to Albuquerque Housing Services that Owner no longer wished to accept Section 8 tenants but would honor existing Section 8 leasing arrangements until such leases expired. By letter dated January 4, 2000, Landlord provided the Bernalillo County Housing Department with a copy of the same July 27 letter, and Landlord specifically stated that Tenant's lease would expire on March 31, 2000, and that Owner would no longer accept Section 8 tenants. Landlord sent Tenant a copy of the January 4 letter.

{5} In response to the January 4 letter, Tenant's attorney sent Landlord a letter dated January 7, 2000, acknowledging the impending termination of the tenancy and asking Landlord to reconsider what Tenant described as an "obviously discriminatory and retaliatory course of action." The letter specifically asserted that the termination of the tenancy was intended to punish Tenant for "prevailing in a groundless eviction action against her, organizing a tenant's union, and reporting code violations to the appropriate local authorities." The letter stated that the decision to terminate the tenancy "reflects a lack of willingness to have dealings with and to accommodate people who have mental disabilities." Because of Tenant's mental disability, for which she was receiving Social Security benefits, Tenant's attorney also asked Landlord to continue Tenant's Section 8 tenancy as a reasonable accommodation of her disability.

{6} Landlord responded by letter to Tenant's accusations, denying any retaliatory or discriminatory motive and refusing to reconsider the decision to not renew Tenant's Section 8 lease. In a separate letter dated February 7, 2000, Landlord's attorneys formally responded to Tenant's request for a reasonable accommodation of her mental disability. The letter noted that Owner's "decision not to accept Section 8 housing is a business decision that is not made by [Landlord]" and that "accepting Section 8 housing is not a request for a reasonable accommodation in any sense of the word." The letter repeated the notice of the expiration of the lease and re-stated that Section 8 tenants would no longer be accepted. Again, by letter dated March 7, 2000, Landlord's attorneys advised Tenant's attorney the Section 8 lease would expire on March 31, and, if Tenant wished to continue to reside at the apartment complex, she was welcome to do so, but needed to complete an application for a standard lease prior to the expiration of the Section 8 lease term. Tenant did not apply for a new standard (non-Section 8) lease, and, by letter dated March 13, 2000, Tenant's attorney informed Landlord that Tenant would not vacate the apartment voluntarily and would not relinquish her Section 8 housing assistance. As a reasonable accommodation of Tenant's disability, her attorney also asked Landlord to accept Tenant's Section 8 certificate as a source of income.

{7} Because Tenant refused to vacate her apartment or enter into a new lease without Section 8 housing assistance, Landlord filed a petition for restitution, claiming the right to immediate possession of the premises, back rent, late charges, damages, costs, and attorney fees. Tenant answered the petition and asserted a number of affirmative defenses. Tenant filed a separate action against Owner

and Landlord seeking damages and injunctive relief under the Fair Housing Act, the New Mexico Owner–Resident Relations Act (NMORRA), and the Unfair Practices Act, and additionally made various common law tort claims. Tenant moved to consolidate her civil action with this proceeding, but the district court apparently never explicitly ruled on the motion to consolidate and Tenant's civil action is still pending in a separate district court proceeding.

{8} Relying solely on the documentary evidence submitted by the parties, the district court concluded that the lease between the parties expired on March 31, 2000, and that Owner was not required to renew the lease. The court further concluded that the Section 8 housing program is a voluntary government program in which Owner is not required to participate, that continued participation in the program is not a reasonable accommodation required of Owner because of Tenant's mental disability, and that Tenant otherwise had adequate remedies at law. The court, therefore, granted Landlord's petition for restitution, and Tenant now appeals. She raises three main contentions: (1) Landlord failed to prove that it gave Tenant legally sufficient notice of its decision not to continue Tenant's Section 8 lease; (2) the district court failed to adequately address Tenant's affirmative defenses, and (3) the district court improperly excluded evidence that Tenant wanted to submit in support of her affirmative defenses.

*Legally Sufficient Notice*

{9} Tenant argues that Landlord failed to provide Tenant with an unequivocal notice to vacate the premises because Landlord only notified Tenant that Owner was unwilling to rent the premises under the Section 8 housing program and also offered to continue renting the premises to Tenant at a presumably higher rate under a standard rental agreement. *See T.W.I.W., Inc. v. Rhudy,* 96 N.M. 354, 358, 630 P.2d 753, 757 (1981) (holding that notice of termination, when coupled with offer to remain at increased rental, is insufficient to terminate tenancy). We question whether Tenant adequately preserved this argument for review on appeal. Al-

though Tenant did assert in her answer and affirmative defenses to the petition that Landlord's notice was equivocal, and therefore insufficient, Tenant's trial brief and requested findings and conclusions relied solely on whether Landlord's notice was based on good cause. *See Hinkle v. Schmider,* 70 N.M. 349, 353, 373 P.2d 918, 920–21 (1962) (holding in suit by real estate broker for commission, defendants' failure to request findings regarding whether plaintiff produced qualified purchaser, resulted in waiver of argument that broker was not entitled to commission because he failed to produce qualified purchaser). But even assuming her argument was not waived, we disagree with Tenant's reliance on *Rhudy* to argue that the notice from Landlord was ineffective because it was equivocal.

{10} In *Rhudy,* there was an ongoing month-to-month tenancy at the time the landlord sent the tenant a notice stating that "it would be the best for all concerned if you would vacate the property . . . . In the event you do not deem it possible to move at the present time, you are now advised that your rent will be raised to $612.00 per month beginning November 1, 1979." *Id.* at 358, 630 P.2d at 757 (internal quotation marks omitted). In contrast to *Rhudy,* in this case, Landlord advised Tenant that at the end of the term of the lease, Landlord would no longer continue to rent the premises to Tenant under a Section 8 leasing arrangement. Thus, *Rhudy* is distinguishable because Landlord was not seeking to terminate an ongoing tenancy, but was instead advising Tenant that the lease would not be renewed under the Section 8 program. Moreover, even though Landlord may have offered to rent the premises to Tenant at a higher rate, Tenant unambiguously refused to give up her Section 8 leasing status and enter into a new standard residential lease as suggested by Landlord. The terms of the notice, and Tenant's response, indicate Landlord's notice was sufficiently definite and unequivocally notified Tenant of Landlord's unwillingness to continue renting the premises to Tenant under the Section 8 housing program.

{11} Tenant also argues that Landlord's notice was insufficient to terminate the Sec-

tion 8 leasing arrangement between the parties under the express terms of the lease addendum because the notice failed to set forth good cause for termination of the tenancy. The lease addendum requires good cause for termination of the tenancy. In contrast, Landlord argues that any requirement for good cause to terminate the tenancy is inapplicable in this case because Landlord was not seeking to terminate the tenancy, but rather was notifying Tenant the lease would not be renewed under the Section 8 housing program when the one-year term of the lease expired.

{12} In this argument, Tenant relies on language in the lease addendum requiring automatic renewal of the lease after the initial term, and on language in the lease itself providing that the agreement between the parties would automatically renew at the end of the initial term of the lease on a month-to-month basis. In essence, Tenant's construction of the lease and lease addendum precludes the distinction Landlord tries to draw between terminating an ongoing lease and refusing to renew a lease that is about to expire. In Tenant's view, a showing of good cause to terminate the tenancy is required at all times because of provisions in the lease and lease addendum providing for automatic renewal of the lease on a month-to-month basis. We believe Tenant's construction of the requirements in the lease and lease addendum are inconsistent with the federal law upon which they are based.

{13} Under prior statutory versions of the Section 8 housing program, a number of courts held that good cause was required for the non-renewal of Section 8 leases, the same as it is required for mid-lease terminations, *see, e.g., Mitchell v. United States Dep't of Hous. & Urban Dev.*, 569 F.Supp. 701, 710 (N.D.Cal.1983); *Swann v. Gastonia Hous. Auth.*, 502 F.Supp. 362, 367 (W.D.N.C.1980); *Templeton Arms v. Feins*, 220 N.J.Super. 1, 531 A.2d 361, 366 (App.Div.1987); *Rushie v. Berland*, 130 Misc.2d 816, 502 N.Y.S.2d 359, 360–61 (App.Term.1986) (per curiam). Prior to 1996, Section 1437f(d)(1)(B)(ii) only provided that "the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease,

for violation of applicable Federal, State, or local law, or for other good cause." Courts concluded that this language demonstrated an intent by Congress to require a showing of good cause before an owner could refuse to renew a lease under the Section 8 housing program. *See, e.g., Mitchell*, 569 F.Supp. at 707–08; *Templeton Arms*, 531 A.2d at 366–69; *Rushie*, 502 N.Y.S.2d at 360–61. However, in 1996, Congress enacted a temporary amendment to add an introductory clause to Section 1437f(d)(1)(B)(ii), which provided that *"during the term of the lease,* the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." Act of Apr. 26, 1996, Pub.L. No. 104–134, § 203(c)(2), 110 Stat. 1321, 1321–281 (1996) (emphasis added). Congress made this statutory amendment permanent in 1998. *See* Act of Oct. 21, 1988, Pub.L. No. 105–276, § 549(a)(2), (3), 112 Stat. 2461, 2607 (1998).

{14} Landlord argues that inclusion of the phrase "during the term of the lease" in Section 1437f(d)(1)(B)(ii) makes all of the cases relied upon by Tenant inapplicable and that the statutory change demonstrates Congress' intent to make continued participation in the Section 8 program by landlords completely voluntary. We agree that the latest statutory amendments to Section 1437f(d)(1)(B)(ii) support Landlord's position that the change in language was intended to relieve landlords from the burden of showing good cause before they may refuse to renew a Section 8 lease. *See Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 n. 5 (2d Cir.1998) (recognizing that 1996 amendments to Section 1437f(d)(1)(B)(ii) effectively repealed the "so-called 'endless lease' provision," which had prohibited landlords from refusing to renew Section 8 leases without a showing of good cause); *see also* S.Rep. No. 104–140, at 50, 70 (1995); H.R. Conf. Rep. No. 104–384, at 55 (1995); S.Rep. No. 104–195, at 31 (1995); H.R.Rep. No. 105–76, at 126 (1997); S.Rep. No. 105–21, at 36–37 (1997). Based on these statutory amendments, and in light of the legislative history underlying these amendments, the district court correctly concluded that Landlord did not need to show good cause to refuse to

renew Tenant's lease under the Section 8 housing program.

*Affirmative Defenses to Petition for Restitution*

{15} Tenant contends that even if Landlord did not need good cause to terminate the tenancy, the district court nevertheless abused its discretion by failing to consider Tenant's affirmative defenses to Landlord's petition for restitution. As affirmative defenses to the restitution petition, Tenant asserts that Landlord's decision not to continue. the Section 8 tenancy was motivated by a desire to retaliate against Tenant for her tenant-union organizing activities, her complaints to local building and health code enforcement agencies, and her successful defense to a prior eviction action by Landlord. Tenant further asserts that Owner did not renew her Section 8 lease because of Owner's prejudicial attitudes toward the mentally disabled and that Landlord's failure to continue her Section 8 tenancy was in violation of Landlord's obligation under the Fair Housing Act to make reasonable accommodations for Tenant's mental disability.

{16} Landlord counters that Tenant failed to preserve this issue of abuse of discretion for review on appeal. However, our review of the record indicates that Tenant did ask the district court to consider her affirmative defenses in her trial brief, in the hearing before the district court, and in her requested findings and conclusions. As noted above, the district court explicitly ruled that continued participation in the Section 8 housing program is not a reasonable accommodation required because of Tenant's mental disability and that Tenant otherwise had adequate remedies at law. Because of the nature of the district court's decision, we will examine the propriety of the manner in which the district court disposed of Tenant's claim for reasonable accommodations separate from her claims of a retaliatory or discriminatory motive on the part of Landlord and Owner.

*Reasonable Accommodations*

{17} Tenant contends that Landlord engaged in unlawful discrimination under the Fair Housing Act by failing to provide a reasonable accommodation of her mental disability. The Fair Housing Act prohibits discrimination in the rental of dwellings to persons with disabilities, *see* 42 U.S.C. § 3604(f) (1994), and the definition of discrimination includes a refusal to make reasonable accommodations needed to afford the disabled tenant an equal opportunity to use and enjoy the dwelling. *See* 42 U.S.C. § 3604(f)(3)(B); *see also Roe v. Hous. Auth.*, 909 F.Supp. 814, 820–21 (D.Colo.1995). Tenant asserts that, because of her disability, she needs the Section 8 rent subsidy to enable her to pay for housing and that Landlord has failed to make a reasonable accommodation as required under the Fair Housing Act by refusing to maintain the Section 8 leasing arrangement.

{18} Landlord relies on *Salute*. In *Salute*, the Second Circuit Court of Appeals held that accepting a Section 8 tenant cannot be considered an accommodation under the Fair Housing Act because the Act "addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps." *Salute*, 136 F.3d at 301. Additionally, the *Salute* Court held that even if the acceptance of a Section 8 leasing arrangement could be deemed to be an accommodation of a tenant's disability, the acceptance of a Section 8 leasing arrangement would not be a reasonable accommodation because of the substantial costs and burdens imposed on landlords involved in the Section 8 housing program. *Id.* at 300 (stating that voluntariness provision of Section 8 reflects congressional intent that burdens of program are sufficiently substantial so as not to be forced on landlords for any reason, including as an accommodation of handicap).

{19} Tenant seeks to distinguish *Salute* by pointing out that in that case the landlord was refusing to accept prospective Section 8 tenants while, in this case, Landlord refuses to renew a pre-existing Section 8 tenancy. We do not consider the distinction to be persuasive. The question of whether the landlord's acceptance of a Section 8 leasing arrangement is an accommodation of a tenant's disability is not dependent on whether the recipient of Section 8 assistance is a prospective tenant or a pre-existing tenant.

Moreover, if such a landlord were required to continue a Section 8 leasing arrangement as an accommodation of a tenant's disability, the landlord would be subjected to the same costs and burdens that make such an accommodation unreasonable under the circumstances presented in *Salute.*

{20} Tenant asks this Court to depart from the majority opinion in *Salute* in favor of the dissent's interpretation of the Fair Housing Act that would recognize that the need for Section 8 housing assistance may indeed be directly related to a tenant's disability, and as such, be an accommodation within the meaning of the Fair Housing Act. *See id.* at 309–10 (Calabresi, J., dissenting). Even if we viewed a Section 8 leasing arrangement as an accommodation of Tenant's disability, the question would remain as to the "reasonableness" of such an accommodation when balanced against the substantial costs and burdens imposed on the landlord under the Section 8 housing program. *See id.* at 300–01. The dissent in *Salute* discounted the burden associated with accepting the Section 8 tenant in that case because the landlord was maintaining other Section 8 leasing arrangements with other tenants, *see id.* at 310–11 (Calabresi, J., dissenting). In this case, Landlord has already elected to withdraw entirely from participation in the Section 8 housing program. As we have discussed, a landlord is free to decide not to renew a Section 8 lease without a showing of good cause. As a result, the district court did not err in ruling that Landlord was not required to accept Tenant's Section 8 status as a reasonable accommodation of her disability under the Fair Housing Act.

*Retaliatory and Discriminatory Eviction*

{21} Tenant also argues the district court erred by failing to address her claims for retaliatory and discriminatory eviction practices by Landlord. As noted above, Tenant alleged in her affirmative defenses to Landlord's petition for restitution that the decision not to renew her Section 8 lease was in retaliation for Tenant's efforts to organize a tenants' union, Tenant's reports to code enforcement agencies, and Tenant's successful defense against Landlord in a prior eviction proceeding. Tenant also alleged that the decision not to renew her Section 8 lease was motivated by Owner's discriminatory views toward the mentally disabled.

{22} Unlike Tenant's claim of a failure to make reasonable accommodations under the Fair Housing Act, the district court did not issue specific findings of fact and conclusions of law concerning Tenant's affirmative defenses alleging unlawful retaliatory and discriminatory motives on the part of Landlord and Owner. However, by refusing to adopt Tenant's requested findings and conclusions with regard to these affirmative defenses, we must infer that the district court decided Tenant's affirmative defenses were insufficient to prevent the issuance of a writ of restitution to Landlord. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (stating failure of trial court to make finding of fact is regarded as finding against the party seeking to establish the affirmative). The district court specifically found that Tenant had adequate remedies at law. With this finding, we believe the district court did not actually reject the claims embodied in Tenant's affirmative defenses, but simply concluded that Tenant should pursue those claims in the separate civil action Tenant initiated in district court, rather than in the summary eviction proceeding initiated by Landlord. Tenant counters this ruling of the district court by arguing that a separate action for damages is not adequate because she is also relying on the claims embodied within her affirmative defenses to prevent Landlord from refusing to renew the Section 8 leasing arrangement. *See* NMSA 1978, § 47–8–45 (1975) (stating that in response to petition for restitution, tenant may "assert any legal or equitable defense, setoff or counterclaim"). We find no error in the approach taken by the district court under the circumstances of this case.

{23} NMSA 1978, § 47–8–39(A) (1999) prohibits an owner from retaliating against a tenant who engages in protected activities such as complaining to a government agency, engaging in tenant union activities, or prevailing in a lawsuit with a landlord by "increasing rent, decreasing services or by bringing or threatening to bring an action for

possession" because the tenant engaged in protected activities. Such a violation is a defense to an action for possession. Section 47–8–39(B). However, despite the prohibitions contained in Section 47–8–39(A), an owner may increase rent and change services at the end of the term of a rental agreement if the owner establishes that the increase in rent and change in services "are consistent with those imposed on other residents of similar rental units and are not directed at the particular resident, but are uniform." Section 47–8–39(C).

{24} Tenant claims that by refusing to renew the Section 8 lease, Owner effectively raised her rent and decreased services in retaliation for Tenant's protected activities. But, as noted above, the parties do not dispute that Owner's decision to discontinue participation in the Section 8 housing program was to be uniformly applied to all Section 8 tenants as their leases expired. Accordingly, Tenant cannot base her retaliation defense on Owner's decision to discontinue the Section 8 program. *See* § 47–8–39(C). Thus, the district court did not err in its decision to grant Landlord's petition for restitution in spite of Tenant's claim of retaliation.

{25} Aside from her claims of retaliatory eviction, Tenant also asserts that the decision not to renew her Section 8 lease was motivated by Owner's discriminatory views toward those, like Tenant, who suffer from a mental disability. To the extent Tenant sought to prevent eviction by relying on a defense of discriminatory eviction, *see Roe*, 909 F.Supp. at 820 (holding plaintiff can prove Fair Housing Act violation by showing intentional discrimination), Landlord argues that it would be inappropriate to permit Tenant to assert affirmative defenses that would allow her to remain in the premises because Owner could properly refuse to renew the lease without a showing of good cause. Tenant counters that even if a landlord may be able to establish a right to restitution, the district court still has the authority to exercise its inherent equitable powers to prevent eviction. *See City of Albuquerque v. Brooks*, 114 N.M. 572, 575,

844 P.2d 822, 825 (1992) (holding that in response to petition for restitution, tenant may assert any legal or equitable defense and equitable principles may be applied to prevent eviction even if tenancy has been terminated); *see also Navajo Acad., Inc. v. Navajo United Methodist Mission Sch., Inc.*, 109 N.M. 324, 330, 785 P.2d 235, 241 (1990) (affirming district court's use of equitable power to allow tenant to remain on premises despite terminated tenancy to allow it to continue functioning as a school while it searched for a new location).

{26} While we agree with Tenant that the district court has the equitable power to permit a tenant to remain in possession of the premises even in the absence of a valid tenancy, the exercise of those equitable powers is a matter left to the sound discretion of the district court, which we only review for an abuse of discretion. *See Brooks*, 114 N.M. at 574, 844 P.2d at 824 (stating that the application of equitable defenses rests in the sound discretion of the trial court). In reviewing the district court's decision not to exercise its equitable powers to permit Tenant to remain in the premises, we cannot ignore the fact that participation in the Section 8 housing program is voluntary. Additionally, there was no allegation or showing by Tenant that her mental disability would prevent her from finding housing elsewhere or that she would be unable to locate other Section 8 housing opportunities in the area. Therefore, the district court did not abuse its discretion in refusing to exercise its equitable authority, instead leaving Tenant to pursue legal remedies for damages that she had already initiated in her separate lawsuit against Landlord and Owner. Further, because the district court's decision is not dependent on examining the strength of Tenant's claim of discriminatory intent, it did not abuse its discretion by not admitting the letter Tenant wanted to submit to demonstrate Owner's discriminatory views toward the mentally disabled. *See generally Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (stating that admission or exclusion of evidence reviewed for abuse of discretion).

*Conclusion*

{27} Based on the foregoing, we affirm the district court's judgment granting Landlord's petition for restitution. Our decision, and the decision of the district court, should not be construed to express an opinion on the merits of Tenant's legal claims for damages that she is pursuing in her separate civil action.

{28} **IT IS SO ORDERED.**

RICHARD C. BOSSON, Chief Judge, and IRA ROBINSON, Judge, concur.