**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-026

Filing Date: December 3, 2012

Docket No. 30,910

OSCAR SERNA,

       Plaintiff-Appellee,

v.

JONITA GUTIERREZ,

       Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Donavon A. Roberts
Albuquerque, NM

for Appellee

Olsen, Parden & Crow, P.C.
Shannon A. Parden
Albuquerque, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}**    The district court issued an opinion and order affirming a metropolitan court judgment that awarded Oscar Serna (Landlord) restitution of the premises rented under a federal housing program based on Jonita Gutierrez's (Tenant) failure to timely pay rent for two months and Tenant's delay in the payment of a portion of her security deposit. Tenant appeals the district court's order, arguing that the metropolitan court terminated the tenancy without complying with the federal requirements for termination and eviction. Because Landlord failed to demonstrate a serious violation of the lease during its first one-year term, we reverse and remand this matter to the metropolitan court for further proceedings.

1

**FACTS**

**{2}**     Tenant rented a residential property from Landlord for a one-year term beginning July 1, 2009 (the Lease). The Lease was entered into as part of a federal government rent-subsidy assistance program commonly known as the Section 8 housing program. *See* 42 U.S.C. § 1437f (2009) (amended 2011). The applicable federal regulations relevant to the parties dispute are codified at 24 C.F.R. § 982.310 (2010) (owner termination of tenancy). A housing assistance payment contract was also executed by the parties and the public housing agency, Albuquerque Housing Services, in order to comply with the requirements to participate in the Section 8 housing program. *See* 24 C.F.R. § 982.305(c) (2004). Under the Section 8 housing program, the Department of Housing and Urban Development (HUD) enables tenants on public aid to acquire rental housing for a percentage of their public assistance income, while the federal government guarantees to the landlord that it will pay the balance of the fair rental value of a rental unit. *See* 42 U.S.C. § 1437f.

**{3}**     The Lease began on July 1, 2009, and required Tenant to pay a $700 security deposit. The rent for the term of the Lease was $538 per month. The amount to be paid by federal public housing assistance was $446 per month. Tenant's monthly payment was $92. If the rent was not paid in full on the first day of the month, the Lease authorized Landlord to charge a $35 late payment fee. The Lease permitted Landlord to terminate the tenancy if Tenant committed a serious violation of the Lease or a violation of federal, state, or local law. It also permitted Landlord to terminate the Lease for other good cause but only after the completion of the first one-year term of the Lease. It is not disputed that Landlord's petition to terminate the Lease occurred on August 13, 2009, during the first one-year term of the Lease.

**{4}**     Tenant moved into the premises on June 28, 2009. Tenant paid $100 of the security deposit prior to moving in and was told that she owed $74 in rent for the three days that she occupied the premises during the month of June. In June, Tenant wrote two checks to Landlord in an attempt to pay rent for the month of June and the $600 balance remaining on the security deposit. When Landlord's wife attempted to cash the checks, she discovered that they were written from a closed account. Tenant failed to make any further payments toward the amount claimed to be due for June rent. Tenant did pay the $600 remainder of the security deposit on October 1, 2009.

**{5}**     In July and August, Tenant's rent payments were delivered after the first day of the month and were subject to a late charge under the Lease. Tenant did not pay her portion of the July rent until July 17, 2009. Her July rent payment was late because Albuquerque Housing Services did not mail Tenant her federal public assistance check and the letter advising Tenant that her portion of the monthly rent payment was $92 until July 13, 2009. Tenant mailed her portion of the August rent on August 3, 2009, the same day that she received her federal public assistance check. By early October 2009, Tenant had fully paid the security deposit and was current on all her monthly rent payments under the Lease.

2

**{6}** On August 13, 2009, Landlord filed a petition for restitution against Tenant, alleging that he was entitled to possession of the premises because Tenant had breached the Lease by failing to pay the full security deposit, the June rent, and the full amount of rent for July and August. Landlord's petition did not assert any claim that Tenant committed a violation of law. At the time of his petition, Landlord claimed that the monthly rent amount for the property was $875 per month. Tenant answered the petition, asserting that she had paid the Lease amount of $538 per month and that she had paid $100 of the security deposit. She argued that the parties had agreed that she could pay the $600 remainder of the security deposit by October 2009, and alleged that Landlord's petition was an attempt at retaliation for her complaint to Landlord about a plumbing problem.

**{7}** The metropolitan court held two hearings to address the issues in this case. After hearing testimony from both parties, the metropolitan court found that the case came down to credibility. It found much of Tenant's testimony troubling. Although the court heard testimony regarding Tenant's prior criminal convictions involving bad checks, theft, and fraud, its findings related to Tenant's credibility were based on the substance of her testimony, not her prior criminal convictions.

**{8}** Ultimately, the metropolitan court found that the testimony from Landlord, his wife, and his sister was more credible than Tenant's testimony. As a result, the metropolitan court entered a judgment for restitution in favor of Landlord and terminated the Lease. The metropolitan court judgment restored the premises to Landlord and awarded Landlord $144 for past-due rent, $117 for costs, and $4,000 for attorney fees. The past-due rent amount was calculated by adding Tenant's $74 unpaid June rent with two $35 late rent payment fees for the months of July and August.

**{9}** Tenant appealed the metropolitan court judgment to the district court. On appeal, she raised six issues: (1) that the metropolitan court erred in finding that she did not pay the June rent; (2) whether any failure to pay the June rent could be used to evict her when the Lease was not even in effect in June; (3) whether the metropolitan court erred in allowing Landlord to introduce Tenant's criminal background; (4) whether the metropolitan court violated Tenant's Section 8 property interest in the Lease by evicting Tenant without finding a material violation of the Lease; (5) whether the metropolitan court erred in denying Tenant's counterclaim for retaliation; and (6) whether the metropolitan court erred in awarding Landlord attorney fees and costs. After reviewing arguments by the parties and the metropolitan court record, the district court affirmed the judgment of the metropolitan court.

**{10}** Like the metropolitan court, the district court found that the case was largely one of credibility. As such, it affirmed the findings of the metropolitan court, as a fact finder, with regard to Tenant's retaliation counterclaim, Tenant's failure to timely pay the June rent, and Tenant's version of events with regard to the security deposit. The district court found that Tenant failed to preserve her argument regarding the termination of the Lease based upon any failure to timely pay her June rent but noted that the metropolitan court decision did not

3

consider the June rent when it ruled in favor of Landlord. Instead, the district court found that the metropolitan court ruled in favor of Landlord because it rejected Tenant's version of events with regard to the security deposit. The district court determined that Tenant's failure to pay her security deposit within the first three months of the one-year Lease was a violation of her Section 8 tenancy.

**{11}**    The district court also found that Tenant failed to preserve her legal argument that the metropolitan court erred in evicting her without finding a material violation of the Lease. However, the court did briefly address the issue. It concluded that the metropolitan court implicitly determined that Tenant's "failure to timely pay $600 of a $700 security deposit constituted good cause or a serious violation of the [L]ease," and that this determination was not error.

**{12}**    With regard to attorney fees, the district court found that the metropolitan court did not err in determining that, as the prevailing party, Landlord was entitled to attorney fees. It explained that while the $4,000 award of attorney fees was a large sum, Tenant had requested $10,000 in attorney fees. It also concluded that Tenant never argued to either the district court or the metropolitan court that Landlord's attorney fee request was unreasonable; she instead argued that Landlord was simply not entitled to attorney fees because both parties won and lost issues in the case. Tenant timely appealed the district court judgment restoring the property to Landlord and ordering Tenant to pay past-due rent, fees, and costs.

**STANDARD OF REVIEW**

**{13}**    Because this was an appeal from an on-record metropolitan court trial, the district court reviewed the case in its appellate capacity for legal error. *See* NMSA 1978, § 34-8A-6(b) (1993); *State v. Trujillo*, 1999-NMCA-003, ¶ 4, 126 N.M. 603, 973 P.2d 855 ("For on-record appeals the district court acts as a typical appellate court, with the district judge simply reviewing the record of the metropolitan court trial for legal error."). We apply the same review on appeal, determining whether there was legal error in the district court's determination. *See Trujillo*, 1999-NMCA-003, ¶ 4.

**DISCUSSION**

**{14}**    Tenant argues on appeal that the district court erred in affirming the metropolitan court's judgment. Tenant argues that the metropolitan court erroneously terminated the Lease due to Tenant's non-payment of the June rent and without Landlord establishing the statutory requirements to terminate, that substantial evidence supported her counterclaim for retaliation, and that the metropolitan court erred in awarding attorney fees to Landlord.

**Termination of the Lease**

**Preservation**

4

**{15}** We first address whether Tenant adequately preserved her objections with regard to termination of the Lease. Tenant argues on appeal that it was error for the metropolitan court to terminate the Lease without finding a material violation of the Lease. Tenant further argues that it was error for the metropolitan court to consider Tenant's non-payment of June rent as part of the basis for terminating the Lease. Tenant appealed both of these issues to the district court, and the district court held that neither issue was preserved for review. As such, Tenant asks this Court to review her claim for fundamental error. Landlord responds that the doctrine of fundamental error is inapplicable to Tenant's appeal and argues that this Court should not consider the merits of Tenant's unpreserved appellate arguments.

**{16}** The metropolitan court decision to terminate the Lease reflects a finding that Tenant's payment of the security deposit in October and her late rental payments for July and August constituted good cause or a serious violation of the lease. Without such a finding, there was no contractual basis for Landlord to terminate the Lease. The only grounds for Landlord to terminate the Lease during the first year's term were for a "serious violation of the terms and conditions of the Lease" or a violation of "federal, [s]tate, or local law." "Other good cause" was not a proper ground for termination of the Lease during this first term. The burden was on Landlord to present evidence to establish his basis to terminate the Lease. *See Atma v. Munoz*, 48 N.M. 114, 120, 146 P.2d 631, 634 (1944) (recognizing that the burden is on the landlord in a lease dispute to establish that "the lease contract had been breached and that such breach entitled [the landlord] to the possession of the property in question"); *Cunningham v. Springer*, 13 N.M. 259, 285, 82 P. 232, 236-37 (1905) (recognizing that the plaintiff bears the initial burden of proof to establish the existence of a contract and the terms to be enforced under it), *aff'd*, 204 U.S. 647 (1907). Tenant has the right to appeal this ruling in Landlord's favor. *See* Rule 1-073(O) NMRA (stating that to preserve a question for review by the district court in an appeal on the record, it must appear that a ruling or decision by the metropolitan court was fairly invoked, that if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party, and that the rule shall not preclude the district court from considering jurisdictional questions or, in its discretion, questions involving general public interest or fundamental error or fundamental rights of a party). Where Tenant's appeal is based upon whether the Landlord's evidence met the contractual requirements for termination, she has adequately preserved this issue by alerting the court to the insufficiency of Landlord's evidence to meet the required legal standard expressly stated in the Lease. *See Romero v. Mervyn's*, 109 N.M. 249, 253 n.2, 784 P.2d 992, 996 n.2 (1989) (explaining that a party has adequately preserved a challenge to the sufficiency of evidence when that party specifically calls the lack of substantial evidence on a material issue to the lower court's attention).

**{17}** Although the district court held that Tenant's appeal was not preserved for review, the record reflects that it addressed the merits of Tenant's appellate issues. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve a question for review it must appear that [a ruling or decision by the district court was] fairly invoked[.]"). In doing so, the district court both recognized and affirmed the metropolitan

5

court's implicit determination that Landlord met the legal requirements to terminate the Lease entered into by the parties on the basis of good cause or a serious lease violation.

**{18}** The primary purpose of the rule for preservation is to ensure "(1) that the [district] court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection." *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct. App. 1995); *see* Rule 12-216(A) NMRA. Both purposes of the preservation requirement were met in this case. The issue of whether Landlord met the contract requirements for termination the Lease were fully contested by Tenant in metropolitan court, and any implicit determination regarding how Landlord actually met the burden of proof does not defeat Tenant's opportunity to appeal that determination. We conclude that Tenant properly preserved for appellate review in the district court and in this Court the argument that the metropolitan court improperly terminated the Lease based upon the evidence presented by Landlord.

**Termination of a Section 8 Tenancy**

**{19}** The Lease in this case was formed under the Section 8 Housing Choice Voucher Program. *See* 42 U.S.C. § 1437f(o). The language of the Lease mirrors the federal regulation, which permits a landlord to terminate a tenancy if a tenant commits a "[s]erious violation [of the terms and conditions of the lease] (including but not limited to failure to pay rent or other amounts due under the lease)[,]" 24 C.F.R. § 982.310(a)(1), or for "[o]ther good cause," 24 C.F.R. § 982.310(a)(3). However, the terms of the Lease explicitly state that Landlord may not terminate for other good cause within the first one-year term of the Lease. As such, the only material issue in this appeal is whether Tenant committed a serious violation of the Lease—not whether Landlord had other good cause to terminate the Lease.

**{20}** Analysis of the claims of the parties requires an understanding of the Section 8 housing program. The Section 8 housing program exists "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). The Section 8 program is a cooperative venture between HUD, the state, and local public housing agencies, which oversee the day-to-day operations of the Section 8 program. 42 U.S.C. § 1437f(b). While state and local housing agencies contract with landlords who own dwelling units to make assistance payments, HUD enters into annual contribution contracts with the agencies. 42 U.S.C. § 1437f(b)(1). Although it is the local public housing authorities that actually run the Section 8 program, they must do so in accordance with applicable federal regulations. *See* 24 C.F.R. § 982.52 (1995). The Section 8 housing program in New Mexico must also comply with applicable state law. *See Carol Rickert & Assocs. v. Law*, 2002-NMCA-096, ¶¶ 9-14, 132 N.M. 687, 54 P.3d 91 (analyzing the non-renewal of a lease under the Section 8 housing program and whether the landlord's notice complied with federal law and was unequivocal under New Mexico law).

**{21}** The present appeal requires this Court to interpret the statutory requirements for an

owner's termination of a tenancy under the Section 8 housing program and to review the metropolitan court's application of the federal standard in the particular circumstances of this case. Our appellate review, therefore, requires this Court to determine whether the district court correctly applied the law to the facts. *State v. Kerby*, 2007-NMSC-014, ¶ 11, 141 N.M. 413, 156 P.3d 704. As the relevant facts are not in dispute, the appropriate standard of review is de novo. *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947; *see State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) ("If . . . the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo." (internal quotation marks and citation omitted)); *Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (reviewing de novo a lower courts construction of a statute). In this case, before we can review the lower court's application of the facts to the federal statute, we must clarify the factual basis for Landlord's termination of the Lease.

**{22}**     Tenant argues that it was error for the metropolitan court to consider non-payment of her June rent as part of the basis for the termination of the Lease and her eviction. However, in affirming the metropolitan court's judgment, the district court explicitly stated that the metropolitan court ruled in favor of Landlord "based on its rejection of [Tenant's] version of events with regard to the security deposit." It concluded that it was not error for the metropolitan court to implicitly determine that "failure to timely pay $600 of a $700 security deposit constituted good cause or a serious violation of the [L]ease." Except for the amount of damages awarded, Tenant has not pointed this Court to any evidence in the record to support her contention that the termination of the Lease was in any way based on her failure to pay June rent. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**{23}**     Tenant has not challenged the district court's findings with any specificity, and we see nothing to indicate that the metropolitan court erroneously considered Tenant's failure to timely pay the June rent when it terminated the Lease. *See Martinez v. Sw. Landfills, Inc.*, 115 N.M. 181, 186, 848 P.2d 1108, 1113 (Ct. App. 1993) ("[A]n appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and . . . the appellant remains bound if he or she fails to properly set forth all the evidence bearing upon the findings."). Therefore, our obligation is to assume no error occurred. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990) (presuming that the lower court is correct where appellant fails to clearly demonstrate error). As a result, we limit our review to the issue of whether it was error for the metropolitan court to conclude that Tenant's late payments of the security deposit and her monthly rent for July and August constituted a serious violation of the Lease that justified termination of the Lease.

**Serious Violation of a Lease**

**{24}**     Under the Section 8 housing program, a serious lease violation is defined as including, but not limited to, a failure to pay rent or other amounts due under the lease or a repeated violation of the terms and conditions of the lease. 24 C.F.R. 982.310(a)(1). It is not clear to this Court that a late payment or a partial payment is a "failure to pay" within the meaning of the HUD regulation. The parties have not offered any legal authority on this point. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (explaining that where a party cites no authority to support an argument, we may assume no such authority exists). We further recognize that a mere failure to timely pay lease obligations may be cured by late tender. *See City of Albuquerque v. Brooks*, 114 N.M. 572, 574, 844 P.2d 822, 824 (1992) (recognizing that in cases involving public housing, it is an equitable defense and the court may apply equitable principles for the nonpayment of back rent to prevent eviction of a qualified indigent tenant).

**{25}**     In this case, although Tenant's payments may not have been timely, she had fully paid all of her obligations under the Lease by October 2009. We find no evidence in the record to support a finding that Tenant's failure to timely pay rent on the first of the month was based on anything other than the date she received her public assistance checks. HUD has explicitly stated that it did not intend to allow a private landlord to terminate a tenancy for untimely rent payments where it is evident to the landlord that the tenant was unable to timely pay until the tenant received public assistance after the rent due date. *See Am. Nat'l Bank & Trust Co. v. Dominick*, 507 N.E.2d 512, 513-15 (Ill. App. Ct. 1987) (identifying the longstanding HUD interpretation of its lease terminology and its policy that material noncompliance and termination of a tenancy cannot be based upon untimely rental payments where it is evident to the landlord that tenant could only pay his portion of the rent when he received his public assistance funds after the rent due date). As such, we conclude that Tenant's late payment of rent in this case would not constitute a "failure to pay rent" or a "serious lease violation" within the meaning and interpretation of the HUD regulations. *See TBCH, Inc. v. City of Albuquerque*, 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct. App. 1994) (giving "persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them"). We conclude that Tenant's late rental payments for the month of July and August do not constitute a serious violation of the terms and conditions of the Lease.

**{26}**     With regard to the security deposit, New Mexico permits a landlord to demand from the resident "a reasonable deposit to be applied by the owner to recover damages, if any, caused to the premises by the resident during his term of residency." NMSA 1978, § 47-8-18(A) (1989). However, a landlord is not entitled to withhold any portion of the deposit until after the tenancy is terminated. *See* § 47-8-18(D). Under the terms of the Lease, no date was identified regarding when Tenant would pay the security deposit, whether partial payments could be made and, by its express terms, the amount of the security deposit was not allowed to exceed one month's rent. The stated security deposit amount of $700, however, did exceed the monthly rental amount of $538. As a result, it is not clear from the record whether Tenant's delay in the payment of the full security deposit until October constituted a violation of the Lease but, even if it did, nothing in the record indicates that the

timing of Tenant's payment of the security deposit had any significant or material adverse effect on the Landlord's property or economic benefits when they filed a petition to terminate the Lease on August 13, 2009. *See Wilhite v. Scott Cnty. Hous. & Redevelopment Auth.*, 759 N.W.2d 252, 256 (Minn. Ct. App. 2009) (explaining that minor lease violations do not significantly affect a landlord's property or economic interest, whereas serious violations deprive a landlord of either a tangible property interest or a real and significant economic benefit). As such, the ambiguous language of the Lease and the lack of any evidence identifying a significant or materially adverse effect on Landlord cannot establish a serious violation based upon Tenant's three-month delay in paying the balance of the security deposit in October 2009.

{27}     The public policy behind the Section 8 housing program is structured to assist financially disadvantaged members of our society. *See Green Valley Mobile Home Park v. Mulvaney*, 1996-NMSC-037, ¶ 13, 121 N.M. 817, 918 P.2d 1317 ("[I]n . . . *Brooks* . . . , we held that a federal regulation imposing a 'good cause' termination requirement was intended to afford special protection to low-income tenants of subsidized housing."); *see also Wollmer v. City of Berkeley*, 122 Cal. Rptr. 3d 781, 791 (Ct. App. 2011) (classifying indigent persons eligible to receive benefits under the Section 8 housing program as "the most vulnerable population"). It is apparent that the most vulnerable members of our community warrant protection from eviction by imposing a slightly higher standard on their landlords. In return, landlords also benefit when they accept a tenant under the Section 8 housing program because the government guarantees payment for a significant portion of the monthly rent. These protections create a logical societal balance by providing landlords with reasonable economic security and the community's most vulnerable citizens with opportunities for decent housing that they otherwise would be unable to obtain. Such a public policy would apply to the benefit of Tenant under the facts of this case.

**Good Cause**

{28}     We briefly address whether it was legal error for the metropolitan court to conclude that the termination of the Lease was warranted based on the existence of "other good cause." Although HUD regulations permit a landlord to terminate for other good cause based upon something the tenant did or failed to do, the express terms of the Lease do not allow any termination for other good cause during the first one-year term of the Lease. 24 C.F.R. § 982.310(d)(2). The record also supports the contention that Landlord wanted Tenant to pay a higher rental amount for the property—$875 per month rather than $538 per month. Congress has also explicitly stated that a landlord's desire to lease the unit at a higher rental rate cannot be considered as a justification for "other good cause" during the first year of a Section 8 housing program lease. 24 C.F.R. § 982.310(d)(2). Even if Landlord were permitted to use the low rental amount as a good cause basis for terminating the Lease, it could not do so until after the completion of the first one-year term of the Lease. Because the parties were only in the first few months of the first term of the Lease, it was error to allow Landlord to attempt to terminate the Lease on the basis of "other good cause." As a result, Landlord could only terminate on the basis of a serious violation of the terms and

conditions of the Lease, and we have addressed that issue in Tenant's favor. We reverse the judgment of the district court regarding Landlord's claim that he was entitled to terminate the Lease and be awarded restitution of the premises.

**Tenant's Retaliation Counterclaim**

**{29}** Tenant also appeals the metropolitan court's denial of her counterclaim, arguing that it was supported by substantial evidence. The record reflects that the metropolitan court denied Tenant's counterclaim because it did not find that Tenant's testimony on the matter was credible. This Court will not re-weigh the evidence or substitute our judgment for the trier of fact on appeal. *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990); *Dibble v. Garcia*, 98 N.M. 21, 23, 644 P.2d 535, 537 (Ct. App. 1982). Tenant has failed to provide record citations to support her assertion that the Landlord's conduct was an improper retaliation. Consistent with our rules of appellate procedure, we will not address the merits of Plaintiff's sufficiency of the evidence argument any further. *See* Rule 12-213(A)(3) NMRA; *see also Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶¶ 28-29, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments"). As a result, we conclude that the district court did not err in concluding that the metropolitan court's findings and conclusions regarding Tenant's counterclaim were supported by substantial evidence. *See* Rule 12-213(A)(4); *Nance v. Dabau*, 78 N.M. 250, 252, 430 P.2d 747, 749 (1967) ("Findings must be attacked on the basis that there is no substantial evidence to support them. If not so attacked, the findings must be accepted as the facts in the case." (citation omitted)).

**Attorney Fees**

**{30}** Because we have reversed the metropolitan court's judgment terminating the Lease, it is improper to award the Landlord attorney fees as the prevailing party. We remand this matter to the metropolitan court for a redetermination of attorney fees, if any, on behalf of the prevailing party in this eviction proceeding.

**CONCLUSION**

**{31}** We reverse the portion of the district court's opinion and order that affirmed the metropolitan court's termination of the Lease and its award of Landlord's attorney fees. We affirm the portion of the opinion and order that affirmed the metropolitan court's judgment denying Tenant's retaliation counterclaim. We remand this matter to the metropolitan court for further proceedings consistent with this Opinion.

**{32}    IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for _Serna v. Gutierrez_, No. 30,910**

**APPEAL AND ERROR**
Attorney Fees
Preservation of Issues for Appeal
Remand
Standard of Review
Substantial or Sufficient Evidence

**FEDERAL LAW**
Federal Law, General

**PROPERTY LAW**
Landlord Tenant
Leases and Leaseholds